EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Jennifer Marie Rexach<br><br>Peticionaria<br><br>v.<br><br>Carlos Javier Ramírez Vélez<br><br>Recurrido | Certiorari<br><br>2004 TSPR 97<br><br>161 DPR ____ |

Número del Caso: CC-2002-483

Fecha: 15 de junio de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional VII

Juez Ponente:

Hon. José L. Miranda de Hostos

Abogadas de la Parte Peticionaria:

Lcda. Rina Biaggi García
Lcda. Ivette Nieves Cordero
Lcda. Eileen M. Montalvo Muñoz

Abogadas de la Parte Recurrida:

Lcda. Lugui Rivera Rodríguez
Lcda. Mayra Huergo Cardoso

Oficina del Procurador General:

Lcdo. Guillermo A. Mangual Amador
Procurador General Auxiliar

Materia: Divorcio

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Jennifer Marie Rexach

    Peticionaria

       v.

                             CC-2002-483

Carlos Javier Ramírez Vélez

    Recurrido




Opinión del Tribunal emitida por la Jueza Presidenta señora NAVEIRA MERLY



San Juan, Puerto Rico a 15 de junio de 2004


    El presente recurso involucra íntimas fibras emocionales en el contexto de las familias que sufren su desintegración. Para minimizar los efectos de la separación familiar, a partir de 1970 se inició el movimiento que reclamaba los derechos de los abuelos para visitar a sus nietos ya que éstos, cada vez con mayor frecuencia, intervienen activamente en las vidas de sus nietos. Para finales del Siglo XX, prácticamente todos los estados de la Nación Norteamericana habían aprobado leyes que les conceden a los abuelos el derecho a

solicitar visitas a sus nietos.[1] De igual forma, la Asamblea Legislativa del Estado Libre Asociado de Puerto Rico aprobó la Ley Núm. 182 de 22 de diciembre de 1999 para enmendar el Art. 152A del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 591A, a los efectos de facultar a los abuelos para solicitar visitar a sus nietos cuando alguno de los padres haya muerto, en casos de divorcio, separación o nulidad del matrimonio. En el recurso de autos debemos examinar la constitucionalidad de la referida disposición.

## I

La Sra. Jennifer Marie Rexach y el Sr. Carlos Javier Ramírez procrearon durante su relación matrimonial al menor Christian Javier Ramírez Rexach, quien nació el 6 de junio de 1992. Mediante sentencia de divorcio de 23 de abril de 1993, fue disuelto el matrimonio por mutuo consentimiento. Dicha sentencia acogió las estipulaciones de las partes a los efectos de que la custodia le correspondería a la madre y que la patria potestad sería compartida. En lo concerniente a las relaciones paterno filiales, se estipuló que el padre tendría al niño en su compañía todos los domingos desde las ocho de la mañana (8:00 a.m.) hasta las ocho de la noche (8:00 p.m.).

El 30 de abril de 1997, el señor Ramírez Vélez presentó una moción mediante la cual solicitó modificaciones a las

---

[1] *Véase* M. Warren and Kristine Taylor, *Grandparent Visitation Rights: A Legal Research Guide*, Vol. 40, William S. Hein & Co., Inc., 2001, págs. xiii-xiv.

relaciones paterno filiales debido a que se mudaría a Washington. Entre las modificaciones solicitadas se encontraba que el menor se relacionara con su padre durante el verano por un mes y medio y durante doce (12) días en la época navideña en la residencia del padre, ubicada en los Estados Unidos. Además, el señor Ramírez Vélez solicitó que durante el resto del año el niño pernoctara en fines de semana alternos en casa de sus abuelos paternos, el Sr. Porfirio Ramírez y la Sra. Livia Vélez, permitiéndoles a éstos ir a buscarlo los sábados a las diez de la mañana (10:00 a.m.) y llevarlo de vuelta los domingos a las siete de la noche (7:00 p.m.). La señora Rexach se opuso a las modificaciones solicitadas.

Celebrada una vista el 6 de agosto de 1997 en el Tribunal de Primera Instancia, Sala Superior de San Juan, las partes acordaron que en caso de que el padre estuviera imposibilitado de viajar a Puerto Rico para relacionarse con el menor, el niño viajaría a visitarlo en compañía de los abuelos paternos. Nada se acordó en cuanto a que el menor pernoctara en la residencia de sus abuelos. El 4 de agosto de 1999 se celebró una nueva vista sobre las relaciones paterno filiales. En ésta los progenitores reiteraron su acuerdo a los efectos de que el niño viajaría en compañía de sus abuelos paternos para visitar a su padre de éste no poder viajar a Puerto Rico.

Así las cosas, el 18 de mayo de 2000, el Sr. Carlos Javier Ramírez Vélez radicó una moción en la cual solicitó

que el menor se relacionara con sus abuelos paternos en fines de semana alternos a partir del viernes a las cinco de la tarde (5:00 p.m.) hasta el domingo a la misma hora. Además, solicitó que el fin de semana que los abuelos no tuvieran al menor, pudieran verlo una (1) vez durante la semana. La señora Ramírez replicó alegando que el señor Ramírez Vélez carecía de legitimación activa para radicar tal solicitud en representación de los abuelos paternos.

El 3 de julio de 2001, comparecieron los abuelos paternos solicitando que se les permitiera relacionar con su nieto Christian Javier Ramírez Rexach. La peticionaria replicó alegando la inconstitucionalidad del Art. 152A del Código Civil, *supra*, por ser contrario a las Secs. 1 y 8 del Art. II de la Constitución del Estado Libre Asociado y por contravenir la Constitución de los Estados Unidos, a la luz de la decisión de *Troxel v. Granville*, 530 U.S. 57 (2000). Mediante resolución emitida el 31 de enero de 2002, el Tribunal de Primera Instancia, Sala Superior de Carolina,[2] sostuvo la constitucionalidad de la ley y determinó que el Estado, en virtud de su poder de *parens patriae*, tiene un interés apremiante en regular las relaciones entre los abuelos y sus nietos para asegurar el bienestar de los menores; y que nuestra legislación cumple con los criterios establecidos por el Tribunal Supremo federal en *Troxel v. Granville*, *supra*. El foro de instancia ordenó a la Oficina

---

[2] El caso fue trasladado a la Sala Superior de Carolina el 27 de marzo de 2001 para proteger la imparcialidad judicial debido a que la señora Rexach se desempeñaba como Oficial Jurídico en la Sala Superior de San Juan.

de Relaciones de Familia llevar a cabo un estudio sobre las relaciones abuelo filiales.

De dicho dictamen recurrió la señora Rexach ante el Tribunal de Apelaciones (denominado anteriormente Tribunal de Circuito de Apelaciones) alegando que el foro de instancia incidió al permitir la intervención de los abuelos paternos cuando éstos originalmente no habían solicitado el derecho de visitas. Adujo que el foro sentenciador erró al sostener la constitucionalidad de la ley ya que el Estado carecía de un interés apremiante para interferir con el derecho fundamental de los padres en la crianza de sus hijos. Además, radicó una moción en auxilio de jurisdicción solicitando la paralización del estudio social sobre las relaciones abuelo filiales. El foro intermedio declaró con lugar la moción en auxilio de jurisdicción y ordenó la paralización de los procedimientos.

El 26 de abril de 2002, el Departamento de Justicia (en adelante Departamento) compareció ante el Tribunal de Apelaciones para presentar sus argumentos en torno a la constitucionalidad de la ley impugnada. El Departamento alegó que por tener la señora Rexach y el señor Ramírez Vélez la patria potestad compartida de su hijo, la controversia de autos debía ser resuelta como un desacuerdo entre ex cónyuges sobre si el menor debía o no relacionarse con sus abuelos paternos. Debido a lo anterior, adujo que era impropio invocar el Art. 152A del Código Civil y alegar su inconstitucionalidad. En la alternativa, arguyó que la

ley impugnada no contraviene el debido proceso de ley garantizado por la Constitución federal ya que es de factura más estrecha que la medida legislativa invalidada en *Troxel v. Granville*, *supra*. Además, sostuvo que en la mencionada decisión el Tribunal Supremo de los Estados Unidos declaró que la ley era inconstitucional en su aplicación y rehusó entrar a dilucidar la constitucionalidad de su faz de la ley, ya que la adjudicación de los derechos de visita es llevada a cabo caso a caso por los tribunales estatales.

Por su parte, el recurrido, señor Ramírez Vélez, alegó que resultaba inapropiado entrar a considerar los aspectos constitucionales de la legislación ya que existía otro planteamiento que permitía disponer del recurso. Sostuvo que la controversia se circunscribía a determinar la extensión del derecho de un padre con patria potestad compartida para reclamar que su hijo se relacione con sus abuelos paternos. En la alternativa, alegó que la legislación impugnada es constitucionalmente válida debido a que no adolece de amplitud excesiva, como sucedió en el caso *Troxel v. Granville*, *supra*, ya que: (1) solamente concede el derecho de visitas a los abuelos y no a cualquier persona; (2) las visitas solamente pueden solicitarse cuando la unión entre los padres ha sido disuelta por alguna de las razones enumeradas en la legislación; y (3) para que proceda la solicitud es necesario que los padres impidan sin justa causa que el menor se relacione con sus abuelos.

Mediante sentencia emitida el 22 de mayo de 2002, el Tribunal de Apelaciones confirmó el dictamen del foro de instancia. En primer lugar, determinó que el Art. 152A del Código Civil, *supra*, reconoce legitimación activa a los abuelos para solicitar visitar a sus nietos, por lo cual el foro de instancia no erró al considerar su solicitud de relacionarse con el menor. En segundo lugar, resolvió que la legislación no infringe el derecho fundamental de los padres a criar a sus hijos ya que son los abuelos quienes deben probar la necesidad de relacionarse con sus nietos, pues no tienen un derecho automático a las visitas, y que la decisión final se dejó al escrutinio judicial de acuerdo con el bienestar del menor y en armonía con los derechos de los padres. Inconforme con esta determinación, la señora Rexach acudió ante nos, mediante recurso de *certiorari*, alegando la comisión de dos (2) errores:

> ERRÓ EL HONORABLE TRIBUNAL DE CIRCUITO DE APELACIONES AL RESOLVER QUE LA LEY NÚMERO 182 DE 22 DE DICIEMBRE DE 1997 ES CONSTITUCIONAL DE CONFORMIDAD A LA CONSTITUCIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO.

> ERRÓ EL HONORABLE TRIBUNAL DE CIRCUITO DE APELACIONES AL RESOLVER QUE LA LEY NÚMERO 182 DE 22 DE DICIEMBRE DE 1997 ES CONSTITUCIONAL DE CONFORMIDAD A LA CONSTITUCIÓN DE LOS ESTADOS UNIDOS DE AMÉRICA.

El 19 de junio de 2002 expedimos el auto solicitado. En su comparecencia ante nos el señor Ramírez Vélez alegó que la presente controversia carece del requisito de madurez ya que al momento en que la recurrente presentó el recurso de marras el Tribunal de Primera Instancia no había emitido

determinación alguna sobre las relaciones abuelo filiales y, por ende, la señora Rexach fundamenta sus alegaciones en la posibilidad de un daño que aún no ha ocurrido.

Atenderemos en primer lugar el argumento relacionado con la madurez de la controversia por ser un requisito indispensable de la doctrina de justiciablidad.

## II. El requisito de madurez para la justiciabilidad de una controversia

Las doctrinas de auto limitación aplicables a la litigación constitucional han sido el producto de la interpretación del texto de la Constitución Federal y de consideraciones prudenciales en el ejercicio del poder judicial. El requisito de madurez al plantear una controversia de índole constitucional forma parte de dichas doctrinas. Este requisito está fundamentado en consideraciones derivadas de la prudencia y en las limitaciones constitucionales que prohíben al foro judicial emitir opiniones consultivas. Raúl Serrano Geyls, *Derecho constitucional de Estados Unidos y Puerto Rico*, Vol. I, Universidad Interamericana de Puerto Rico, 1997, pág. 195. La madurez en un caso atiende a la proximidad temporal del daño sobre el litigante. *Comisión v. Secretario*, 109 D.P.R. 715, 722 (1980). Los tribunales deben determinar si existe realmente una controversia entre las partes de naturaleza justiciable, propia para un pronunciamiento judicial. *Asociación v. Secretario*, 87 D.P.R. 711, 713 (1963). La madurez debe examinarse mediante un análisis dual: si la

controversia sustantiva es una apropiada para resolución judicial y si el daño es suficiente para requerir adjudicación. *Comisión v. Secretario*, *supra*, pág. 722. El factor determinante es que la controversia esté definida concretamente de manera que el tribunal pueda evaluarla en sus méritos. Serrano Geyls, *supra*.

El señor Ramírez Vélez alega que la peticionaria, señora Rexach, no ha sufrido un daño que amerite una determinación judicial sobre la constitucionalidad del Art. 152A del Código Civil, *supra*, ya que el Tribunal de Primera Instancia aún no ha resuelto si proceden las visitas solicitadas. No le asiste la razón. En el caso de autos el foro de instancia ordenó un estudio sobre las relaciones abuelo filiales para emitir una decisión informada. Ante tales hechos es inminente que la madre sufrirá un daño en su derecho a decidir sobre la crianza de su hijo en caso de que el tribunal ordene unas relaciones abuelo filiales que ésta no aprueba. Además, de determinarse que la legislación impugnada es inconstitucional, el daño se retrotraería al momento en que se permitió la intervención de los abuelos paternos solicitando relacionarse con el menor.

De otra parte, debe tenerse en cuenta la inminencia de que el menor pudiera sufrir un daño si el tribunal ordenara que se relacione con sus abuelos paternos y tales relaciones resultasen ser detrimentales para el bienestar del menor. La naturaleza de la controversia planteada en el recurso de epígrafe hace necesaria nuestra intervención para evitar que

el Estado interfiera indebidamente con los derechos de los padres y madres sobre la forma en la que crían a sus hijos. Más importante aún, no podemos esperar a que un menor tenga señales evidentes de un daño psicológico o físico para ejercer nuestra función constitucional de determinar la adecuacidad de la intromisión del Estado en la esfera íntima de la familia. En consecuencia, resolvemos que el presente recurso cumple con el requisito de madurez y, por lo tanto, es susceptible de ser adjudicado por este Foro.

### III.     Constitucionalidad del Art. 152A del Código Civil

*A. Los derechos de los padres a la luz de la Constitución del Estado Libre Asociado y de la Constitución de los Estados Unidos*

En nuestro ordenamiento las relaciones familiares han sido examinadas por los tribunales en el contexto del derecho a la intimidad. El derecho a la intimidad en Puerto Rico y la protección a la dignidad del ser humano tienen un origen constitucional explícito. El Art. II, Sec. 1 de la Constitución del Estado Libre Asociado establece la inviolabilidad de la dignidad del ser humano como principio de interpretación cardinal para todos los derechos reconocidos en ella. *Vega Rodríguez v. Telefónica de P.R.*, res. el 17 de abril de 2002, 156 D.P.R. _____ (2002), 2002 T.S.P.R. 50, 2002 J.T.S. 58. Por otra parte, el Art. II, Sec. 8, establece que "[t]oda persona tiene derecho a protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". L.P.R.A., Tomo

I.    A  través  de  dichas  disposiciones  la  Asamblea
Constituyente  incorporó  en  nuestra  ley  suprema  nuevas
categorías  de  derechos,  de  factura  más  ancha,  para  que
fueran  interpretados  en  consonancia  con  nuestras  realidades
sociales.  *E.L.A. v. Hermandad de Empleados*, 104 D.P.R. 436,
439-440 (1975).  El  derecho  a  la  intimidad  no  necesita  de
legislación  habilitadora  que  le  insufle  vida  ya  que  opera
por  su  propia  fuerza,  *ex proprio vigore*.  *P.R. Tel. Co. v.
Martínez*, 114  D.P.R.  328,  339  (1993);  *Arroyo  v.  Rattan
Specialties, Inc.*, 117 D.P.R. 35, 64 (1986).

El  referido  derecho  fundamental  ha  sido  reconocido  en
ámbitos,  tales  como  el  penal,[3]  administrativo,[4]  laboral[5]  y  en
las  relaciones  de  familia.  Al  determinar  la  extensión  de  la
intervención  gubernamental  en  las  relaciones  familiares,
expresamos  en  *García Santiago v. Acosta*, 104 D.P.R. 321, 324
(1975):

> En la sociedad democrática organizada alrededor de
> los derechos fundamentales del hombre, el Estado
> ha de reducir a un mínimo su intervención con
> sensitivas urdimbres emocionales como lo son las
> relaciones de familia.  La intromisión en la vida
> privada sólo ha de tolerarse cuando así lo
> requieran factores superantes de salud y seguridad
> públicas o el derecho a la vida y a la felicidad
> del ser humano afectado.

---

[3]    *Véanse Pueblo v. Santiago Feliciano*, 139 D.P.R.  360
(1995); *P.R. Tel. Co. v. Martínez*, *supra*; *Pueblo v. Yip
Berríos*, 142 D.P.R. 386 (1997).

[4]    *Véanse RDT Construction Corp. v. Contralor I*, 141
D.P.R.  424  (1996);  *López Vives v. Policía de P.R.*, 118
D.P.R. 219 (1987).

[5]    *Véanse Arroyo v. Rattan Specialties, Inc.*, *supra*; *Vega
Rodríguez v. Telefónica de P.R.*, *supra*.

De la misma forma, en *Rivera v. Galarza*, 83 D.P.R. 167, 174 (1961), y en *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250, 259, 275 (1978), señalamos que aunque el Estado tiene la responsabilidad de velar por la estabilidad de la familia, la guarda y el cuidado de los hijos, la justa división de los bienes gananciales y la adecuada protección de las partes que interesen disolver su vínculo matrimonial, está impedido, no obstante, de irrumpir en tales aspectos que son eminentemente personales, salvo que exista un interés apremiante.

En la esfera federal los derechos de los padres son examinados principalmente a la luz de la Enmienda Decimocuarta de la Constitución de los Estados Unidos. Dicha enmienda garantiza que ninguna persona sea privada de su vida, libertad o propiedad sin un debido proceso de ley. Esta protección persigue evitar que el Estado abuse de sus poderes y que los utilice como instrumento de opresión o de forma arbitraria. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

El debido proceso de ley se manifiesta en dos (2) vertientes: procesal y sustantiva. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541 (1984). De acuerdo con la vertiente procesal, el Estado tiene la obligación de garantizar que cualquier interferencia con los intereses de libertad o propiedad de las personas se lleve a cabo a través de un procedimiento que sea justo y equitativo. *Id.*, págs. 543-546; *Álvarez Elvira v. Arias*

*Ferrer*, res. el 18 de marzo de 2002, 156 D.P.R. _____ (2002), 2002 T.S.P.R. 31, 2002 J.T.S. 37; *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 230-231 (1987). Por otro lado, la vertiente sustantiva del debido proceso de ley tiene el propósito de salvaguardar los derechos fundamentales de las personas. *Rodríguez Rodríguez v. Estado Libre Asociado*, 130 D.P.R. 562, 576 (1992); *U.S. v. Carolene Porducts*, 304 U.S. 144, 152-153 (1938).

El Tribunal Supremo federal ha reconocido como derechos fundamentales aquellos expresamente consagrados en la Primera Enmienda, además de varias categorías que han sido reconocidas como derechos fundamentales implícitos. Éstos son: la libertad de asociación; el derecho al voto y a participar en el proceso electoral; el derecho a viajar; a un juicio justo; el derecho a que cualquier privación de la libertad, propiedad o vida por parte del gobierno se efectúe mediante un procedimiento justo; y el derecho a la intimidad, que incluye libertad decisoria respecto al cuido y la educación de los hijos. Rotunda, Nowak and Young, *Constitutional Law*, Vol. II, West Publishing, 1986, sec. 15.7, págs. 84-85, citado en *Rodríguez Rodríguez v. E.L.A.*, *supra,* págs. 576-577.

Al aplicar el debido proceso de ley a las relaciones familiares,[6] se ha interpretado que dentro del concepto

---

[6] En *Smith v. Organization of Foster Families*, 431 U.S. 816, 843-844 (1977), se reconoció que el parentesco por consanguinidad no es el único factor para determinar la existencia de una familia. Dentro del concepto "familia" están comprendidos aquellos lazos emocionales que surgen de

"libertad" de la Decimocuarta Enmienda están incluidos, entre otros, el derecho a casarse, a establecer un hogar, a procrear y a criar a los hijos. *Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923); *Skinner v. Oklahoma*, 316 U.S. 535 (1942). Los menores de edad no son meras criaturas del Estado, por ende, la relación entre padres e hijos está protegida constitucionalmente y se ha establecido que los padres tienen derecho a decidir sobre el cuido, la custodia y el control de sus hijos. *Pierce v. Society of Sisters*, 268 U.S. 510, 535 (1925); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (1972); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).[7] Este derecho fundamental se continúa reconociendo incluso cuando a los padres se les priva temporalmente de la custodia de sus hijos y cuando éstos no son del todo aptos para cuidar de los menores. *Santosky v. Kramer*, 455 U.S. 745 (1982); *Depto. de la Familia v. Soto*, 147 D.P.R. 618, 641-642 (1999).

De acuerdo con la decisión emitida en *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618-620 (1984), el reconocimiento a la zona de intimidad que cubre las relaciones familiares obedece a que éstas desempeñan un rol cultural determinante

---

la relación cotidiana y que ejercen un rol determinante en el desarrollo y la educación de los menores.

[7] En *Quilloin v. Walcott*, *supra*, y en *Wisconsin v. Yoder*, *supra*, se reconoció que el derecho de los padres a mantener contacto con sus hijos es un derecho fundamental protegido por las Enmiendas Primera, Novena y Decimocuarta.

ya que propician la transmisión de tradiciones y creencias entre las generaciones. Además, el Estado debe abstenerse de intervenir en la esfera familiar ya que es ahí donde los individuos desarrollan su identidad, la cual es un elemento esencial del concepto libertad.

Por supuesto, ningún derecho fundamental es absoluto, por ende, los derechos de los padres pueden limitarse en aras de proteger un interés apremiante del Estado, como lo es bienestar de los menores. Así, por ejemplo, a los padres y madres se les puede privar, suspender o restringir la custodia[8] de sus hijos, e incluso de la patria potestad,[9] cuando no pueden satisfacer las necesidades de los menores, protegerlos adecuadamente o cuando los menores son maltratados, de acuerdo con la Ley para el Bienestar y la Protección Integral de la Niñez, Ley Núm. 177 de 1 de agosto de 2003. De igual forma, los Arts. 166A al 166C del Código Civil, 31 L.P.R.A. secs. 634A-634C,[10] establecen las causas

---

[8] Entiéndase por custodia la tenencia física de un menor de edad.

[9] La patria potestad es el conjunto de derechos y deberes que corresponde a los padres sobre la persona y el patrimonio de los hijos menores de edad.

[10] Entre las causas enumeradas en los referidos artículos se encuentran:
   a) ocasionar o poner en riesgo sustancial de sufrir daño o perjuicio a la salud física, mental o emocional y moral del menor o permitir o tolerar que otra persona lo ocasione;
   b) dejar de tener en su compañía al menor, dejar de supervisarlo, proveerle alimentos, ropa, albergue, educación o cuidados de salud conforme a sus medios de fortuna;

para privar, suspender o restringir la patria potestad y la custodia. Las referidas medidas legislativas responden al interés del Estado en asegurar el bienestar emocional y físico de los menores de edad. Por otro lado, al adjudicar controversias relacionadas con menores los tribunales deben guiarse por el principio de asegurar el bienestar y los mejores intereses de éstos. *Quilloin v. Walcott*, *supra,* pág. 254; *Nudelman v. Ferrer Bolívar*, 107 D.P.R. 495, 508 (1978); *Chévere v. Levis*, 150 D.P.R. 525, 544 (2000); *Zapata Saavedra v. Zapata Martínez*, res. el 20 de febrero de 2002, 156 D.P.R. _____ (2002), 2002 T.S.P.R. 24, 2002 J.T.S. 30.

En síntesis, indudablemente **en Puerto Rico los padres y madres tienen un derecho fundamental a criar, cuidar y custodiar a sus hijos, protegido tanto por la Constitución del Estado Libre Asociado de Puerto Rico como por la Constitución de los Estados Unidos. No obstante, estos derechos ceden ante intereses apremiantes del Estado en lograr el bienestar de los menores.** Una vez expuesto el

---

c) faltar al deber de supervisión y cuidados del menor cuando este se encuentra en la custodia de otra persona;
d) incurrir en abandono voluntario del menor;
e) explotar al menor obligándolo a realizar cualquier acto con el fin de lucrarse de alguna forma;
f) incumplir con el plan de servicios para reintegrar a un menor a su hogar;
g) incurrir en conducta constitutiva de los delitos de asesinato, homicidio u homicidio involuntario o sus tentativas; delitos contra la vida e integridad corporal; violación; sodomía; actos lascivos; incumplimiento con la obligación de alimentar; abandono de menores; maltrato, entre otros;
h) haber sido convicto por alguno de los delitos antes mencionados.

origen de tal derecho, nos corresponde examinar las reglas que deben guiar nuestra función interpretativa en el presente recurso.

### B. Principios generales

Es principio firmemente establecido que una ley es y se presume constitucional hasta que resolvamos lo contrario. *Nogueras v. Hernández Colón I*, 127 D.P.R. 405, 412 (1990); *Cerame Vivas v. Srio. de Salud*, 99 D.P.R. 45, 51 (1970). Una ley puede ser declarada inconstitucional de su faz o en su aplicación. Para evaluar la constitucionalidad de su faz de una ley debe analizarse si de su texto surge el vicio que la hace inconstitucional y si ésta infringe derechos fundamentales. Por el contrario, para evaluar la constitucionalidad de un estatuto en su aplicación es preciso analizar el contexto en el cual la medida impugnada ha sido aplicada para determinar si ha tenido el efecto de infringir alguna disposición constitucional. *Asoc. Ctrl. Acc. C. Maracaibo v. Cardona*, 144 D.P.R. 1, 22-23 (1997).

Existen ciertas reglas de hermenéutica que delimitan nuestra función interpretativa. Al aludir a dichas reglas expresamos en *Pérez Pérez v. Gobierno Municipal de Lares ex rel.*, res. el 27 de noviembre de 2001, 155 D.P.R. _____ (2001); 2001 T.S.P.R. 160, 2001 J.T.S. 163:

> **Los tribunales debemos siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobar una legislación, de manera que nuestra interpretación asegure la efectividad de la intención legislativa.** Interpretar una ley de forma contraria a la intención legislativa

> implica una usurpación por la Rama Judicial de las funciones de la Rama Legislativa. ... La exposición de motivos de la ley, los informes de las comisiones y los debates en el hemiciclo, en adición al texto de la misma, son las fuentes de mayor importancia en la tarea de determinar el significado de un acto legislativo. **Debemos tomar en consideración que todo acto legislativo persigue un propósito, trata de corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico o bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno, entre otros.** ... Por último, es obligación del Tribunal armonizar, hasta donde sea posible, todas las disposiciones de ley envueltas en el caso con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador. (Énfasis suplido y citas omitidas.)

Desde *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958), reconocimos, al igual que lo hizo el Tribunal Supremo federal, que cuando se cuestiona la validez de una ley, aunque la misma cree serias dudas sobre su constitucionalidad, este Foro primero examinará si existe una interpretación razonable del estatuto que le permita soslayar el planteamiento constitucional. En *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610, 618 (1981), expusimos que "**el Poder Judicial, en abono de una deferencia hacia el Poder Legislativo, debe esforzarse por lograr interpretaciones congruentes y compatibles con el mantenimiento de la constitucionalidad de cada ley**". (Énfasis suplido.) *Véanse Pueblo v. Santiago Feliciano*, 139 D.P.R. 361, 407-408 (1995); *Banco Popular v. Mun. de Mayagüez*, 126 D.P.R. 653, 661 (1990); *Nogueras v. Hernández Colón I, supra,* pág. 412; *P.R.P. v. E.L.A.*, 115 D.P.R. 631,

642 (1984). De igual forma, hemos reiterado "la política judicial de decretar la inconstitucionalidad de una ley sólo cuando ello sea indispensable y [de] no entrar a considerar la inconstitucionalidad de una ley o de una actuación a menos que ello sea imprescindible para resolver la controversia". *Pueblo v. Santiago Feliciano*, *supra,* págs. 407-408. (Citas omitidas.) En el caso de autos, como se demostrará más adelante, no existen circunstancias que hagan imprescindible decretar la inconstitucionalidad del Art. 152A del Código Civil, *supra*, para resolver la controversia entre las partes ya que nuestra legislación se puede armonizar perfectamente con la decisión de *Troxel v. Granville*, *supra*, y con nuestra jurisprudencia.

Finalmente, al ejercer su función este Tribunal debe tener presente que:

> Las leyes deben interpretarse y aplicarse en comunión con el propósito social que las inspira. No deben desvincularse del problema humano cuya solución persiguen, ni descarnarse de las realidades de la vida que la sociedad misma ha proyectado sobre ellas, pues se tornaría ilusorio y se perdería en el vacío el deseo de justicia que las genera. *Figueroa v. Díaz*, 75 D.P.R. 163, 171 (1953); *Chévere v. Levis*, *supra*, pág. 541.

La peticionaria alega que la legislación mediante la cual se le reconoció legitimación activa a los abuelos para solicitar visitar a sus nietos es inconstitucional porque infringe los derechos de los padres a la intimidad y al debido proceso de ley, de acuerdo con la decisión de *Troxel v. Granville*, *supra*. Para atender el planteamiento relativo

a la decisión del Tribunal Supremo de los Estados Unidos resulta necesario discutir lo resuelto por dicho Foro.

*C. El caso Troxel v. Granville*

En una decisión emitida en el año 2000,[11] el Tribunal Supremo federal se vio precisado a interpretar una legislación de Washington que reconocía que cualquier persona podía solicitar visitar a un menor en cualquier momento, siempre que las visitas propendieran a los mejores intereses de éste. La controversia surgió cuando el padre de dos (2) niñas falleció y éstas continuaron relacionándose con sus abuelos paternos regularmente. Sin embargo, la madre informó a los abuelos que deseaba que limitaran las visitas a sus nietas a una (1) vez al mes y sin que éstas pernoctaran en casa de los abuelos. Los abuelos paternos presentaron una petición en el tribunal solicitando que se reconociera su derecho de visita al amparo de la legislación de Washington, Wash Rev. Code sec. 26.10.160(3). La legislación en la cual se fundamentó la petición establecía:

> <u>Any person may petition the court for visitation rights at any time</u>, including, but not limited to, custody proceedings. The court may order visitation rights for any person when visitation may serve the best interest of the child whether or not there has been any change of circumstances. (Énfasis suplido.)

---

[11] La decisión fue emitida por pluralidad en una opinión suscrita por la Jueza Asociada señora O'Connor a la que se unieron el Juez Presidente señor Rehnquist, la Jueza Asociada señora Ginsburg y el Juez Asociado señor Breyer. Los Jueces Asociados señores Souter y Thomas suscribieron opiniones concurrentes, mientras que los Jueces Asociados señores Scalia y Kennedy suscribieron opiniones disidentes.

El Tribunal Superior de Washington ordenó que se permitieran las visitas de los abuelos paternos y la madre de las niñas instó un recurso de apelación. El Tribunal Apelativo de Washington revocó la orden de visitas al resolver que la ley interfería con el derecho constitucional de la madre sobre el cuidado, la custodia y la crianza de sus hijas, sin embargo, la ley no fue declarada inconstitucional. Los abuelos paternos solicitaron revisión ante el Tribunal Supremo estatal el cual decretó la inconstitucionalidad de la ley. Así las cosas, los abuelos paternos presentaron una petición de *certiorari* ante el Tribunal Supremo federal.

El Tribunal Supremo resolvió que la ley de Washington era inconstitucional en la forma en la cual había sido aplicada a la madre de las niñas. **Determinó que la ley era excesivamente amplia, no obstante, rehusó entrar a considerar la extensión de los derechos de los padres a la luz del debido proceso de ley sustantivo en el contexto de los derechos de visita de terceros.** La decisión reconoció que muchos abuelos han asumido roles que comúnmente son ejercidos por los padres y madres y que en vista del envolvimiento de los abuelos en la crianza, cuidado y sostén de los nietos es que muchos estados les han reconocido el derecho de visita. Sin embargo, el Tribunal reiteró que la relación entre padres e hijos está constitucionalmente protegida y que es un interés libertario, de antigua estirpe, protegido por el debido proceso de ley sustantivo.

De acuerdo con la decisión, el estatuto de Washington era excesivamente amplio ya que le permitía a cualquier persona solicitar derecho de visitas. Una vez se presentaba la petición en el Tribunal, el foro sentenciador no le daba deferencia a la decisión de los padres. **La ley no requería que se le diera una consideración especial a la posición de los padres de rechazar las visitas por parte del tercero** y de esta forma la medida contravenía la presunción a los efectos de que las decisiones que toman los padres aptos convienen a los mejores intereses de los menores. **Para el Tribunal Supremo el problema no radicaba en que se solicitara la intervención del foro judicial para solicitar el derecho de visita, sino en que cuando el tercero solicitara visitar a un menor no se le diera una <u>consideración especial</u> al punto de vista de los padres porque el único factor contemplado en la legislación era lo que el tribunal considerase como el mejor bienestar de los menores.** Finalmente, el Tribunal señaló que no iba a declarar inconstitucionales todas las leyes que les reconocieran derechos de visita a terceros ya que corresponde a los tribunales estatales adjudicar caso a caso las controversias que se susciten en este contexto.[12]

De acuerdo con el Tribunal Supremo federal:

---

[12] Para otros comentarios sobre el caso, véanse Alessia Bell, *Note: Public and Private Child: Troxel v. Granville and the Constitutional Rights of Family Members*, 36 HARV. C.R.-C.L. L. REV. 225 (2001); Margaret Byrne, *Current Event: Troxel v. Granville, 120 S. Ct. 2054 (2000)*, 9 AM. U.J. GENDER SOC. POL'Y & L. 243 (2001).

Section 26.10.160(3), as applied to Granville and her family in this case, unconstitutionally infringes on that fundamental parental right. The Washington nonparental visitation statute is breathtakingly broad. According to the statute's text, '*[a]ny person* may petition the court for visitation rights at *any time*,' and the court may grant such visitation rights whenever 'visitation may serve *the best interest of the child*.' That language effectively permits any visitation of the parent's children to state-court review. Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. Section 26.10.160(3) contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, **the Washington statute places the best-interest determination <u>solely</u> in the hands of the judge.** Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.

. . . .

**The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interest.**

. . . .

**Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter.** *Troxel v. Granville, supra*, págs. 67, 69, 73. (Énfasis suplido, bastardillas en el original y citas omitidas.)

Con este trasfondo, pasaremos a examinar nuestra legislación.

*D. La Ley Núm. 182 de 22 de diciembre de 1997*

En Puerto Rico la unidad de la familia, la institución de la patria potestad y las relaciones paterno filiales "están de por sí revestidas de un alto interés público y social, tanto para beneficio del hijo como para beneficio el estado". *Guerra v. Ortiz*, 71 D.P.R. 613, 623 (1950); *Martínez v. McDougal*, 133 D.P.R. 228, 231 (1993). En tales casos el interés no puede ser otro que el bienestar del menor. Rivera *Galarza v. Mercado Pagán*, 139 D.P.R. 619, 638 (1995). Estos principios se fundamentan en el reconocimiento de la familia como el eje central natural de existencia de cada ser humano. Debido a la importancia que se le reconoce a la institución de la familia, hemos expresado que al desmembramiento de los lazos familiares "debe llegarse como recurso final ante una situación ineluctable". *García Santiago v. Acosta*, *supra*, pág. 326.

Al igual que este Tribunal, la Asamblea Legislativa ha reconocido que la familia es la institución básica sobre la cual se erige la sociedad. P. de la C. 608 de 25 de abril de 1997. Para proteger el sitial importante que ocupan los abuelos en el núcleo familiar, se aprobó la Ley Núm. 182, *supra*, que tuvo el efecto de enmendar el Art. 152A del Código Civil, *supra*, a los efectos de establecer:

Derecho de los abuelos

Luego de la disolución del núcleo familiar, ya sea por la muerte de uno de los padres o divorcio, separación o nulidad del matrimonio, no podrán los padres o tutor que ejerza la patria potestad y custodia sobre un menor no emancipado, impedir,

sin justa causa, que éste se relacione con sus abuelos.

Cuando se trate de un menor no emancipado fruto de una relación extramatrimonial tampoco podrá el padre o la madre o tutor que ejerza la patria potestad y custodia sobre dicho menor, impedir, sin justa causa, que éste se relacione con sus abuelos.

En caso de oposición por parte del padre o madre o tutor que ejerza la patria potestad y custodia sobre dicho menor no emancipado se reconoce legitimación jurídica a los abuelos para ser oído [sic] ante el juez quién [sic] decidirá lo procedente tomando en consideración las circunstancias particulares de cada caso y los intereses y bienestar del menor.[13]

Al explicar el alcance de la medida, la Comisión de lo Jurídico Civil de la Cámara de Representantes señaló:

El P. de la C. 608 va dirigido a adicionar el Artículo 152A al Código Civil de Puerto Rico a los fines de reconocer expresamente al tribunal la facultad para regular las relaciones entre abuelos y nietos cuando las circunstancias particulares del caso lo requieran, tomando en consideración los mejores intereses del menor.

Tradicionalmente, la figura del abuelo es una que provee sosiego, solaz, protección y cuidado. El Estado no pretende de forma ni manera alguna limitar el derecho de los padres de velar por sus hijos menores, siempre y cuando cumplan con sus deberes. En cumplimiento de su deber de parens patriae, el Estado le reconoce a los abuelos el derecho a visita a sus nietos dentro del marco jurídico establecido por esta ley.

La familia es el pilar básico sobre el cual descansa la sociedad puertorriqueña y es donde el individuo establece y afirma su identidad. Mediante este proyecto de ley se reconoce que los abuelos juegan un papel importante dentro de ese

---

[13] Esta ley tiene como trasfondo nuestra sentencia en *Ex parte Colón Vázquez*, 126 D.P.R. 337 (1980), donde denegamos la solicitud de unos abuelos de visitar a su nieto ya que en nuestro Derecho positivo no se les había reconocido a los abuelos legitimación activa para solicitar derechos de visita sobre sus nietos.

> núcleo que se llama familia y que éstos contribuyen grandemente al desarrollo físico, social y emocional de sus nietos. En ocasiones se da la situación que por distintas razones el núcleo familiar se desintegra y todos sus componentes se afectan. Ocurre que por una u otra razón se evita que luego de la rotura del núcleo familiar el menor se siga relacionando con sus abuelos, resultando tanto el nieto como el abuelo perjudicado por esta conducta. Informe de la Comisión de lo Jurídico Civil de la Cámara de Representantes sobre el P. de la C. 608 de 1 de junio de 1997, págs. 1-2.

El derecho de visita puede definirse como uno proveniente de la naturaleza y mediante el cual se permite a su titular expresar y manifestar sus sentimientos a otra persona, exigiéndole la utilización de los medios necesarios para proteger tal fin. Lissette Toro Vélez, *El derecho de visita de los abuelos en Puerto Rico: Colón v. Colón*, 33 REV. DER. PRTÑO. 1, 18 (1993). Al reconocer estatutariamente el referido derecho a los abuelos, nuestra legislación se incorpora al grupo de países de tradición civilista, como España y Francia, y a la mayoría de los estados que han aprobado leyes similares. *Id.*, págs. 18-22. El denominador común de estas medidas legislativas es mantener los lazos afectivos entre los abuelos y sus nietos en atención al rol cada vez más activo que éstos ejercen en las vidas de los menores.

En *Alonso García v. Ramírez Acosta*, res. el 16 de septiembre de 2001, 155 D.P.R. \_\_\_\_\_ (2001), 2001 T.S.P.R. 126, 2001 J.T.S. 129, tuvimos ocasión de expresarnos sobre el papel fundamental que desempeñan los abuelos en la sociedad puertorriqueña moderna al extremo de extenderles,

en determinadas circunstancias, la inmunidad en acciones en daños y perjuicios establecida en el Art. 1810A del Código Civil, 31 L.P.R.A. sec. 5150. Allí señalamos:

> La sociedad puertorriqueña ha reconocido tradicionalmente que los abuelos son una figura esencial en la formación y el desarrollo de los nietos. Hoy día, son muchos los abuelos que atienden y cuidan a sus nietos mientras ambos padres trabajan en busca de unos ingresos proporcionados al costo de vida. Comúnmente, los abuelos se preocupan por la salud, la alimentación, el bienestar y la seguridad de sus nietos.
>
> . . . .
>
> El propósito que nos mueve a extender a los abuelos la inmunidad establecida en el artículo 1810A responde a nuestra obligación, como tribunal de justicia, de fomentar e implementar la política pública del Estado de proteger y fortalecer la institución de la familia. Lamentablemente, cada vez más, la institución familiar sufre un serio menoscabo en perjuicio de nuestra sociedad cambiante. Es de vital interés público salvaguardar a aquellos núcleos familiares que permanecen unidos y que sostienen relaciones afectuosas entre sus miembros. (Citas omitidas.)

En *Goff v. Goff*, 844 P.2d 1087, 1091 (Wyo., 1993), el Tribunal Supremo de Wyoming enumeró los cuatro (4) roles simbólicos que los científicos sociales les adscriben a los abuelos.[14] En primer lugar, los abuelos ejercen el rol de estar presentes en las vidas de sus nietos. Esta presencia ayudará a que el menor se mantenga identificado con su familia, especialmente en casos de cambios en el núcleo familiar, y también contribuirá a mantener la unidad familiar. En su segundo rol, los abuelos sirven de

---

[14] *Véase* Melodie Pillitire, *Comment: Grandparent Visitation Rights: The Pitfalls and the Promise*, 2 LOY. J. PUB. INT. L. 177, 185-186 (2001).

guardianes para detectar señales de maltrato o negligencia en los menores. Tercero, los abuelos sirven de mediadores entre los padres e hijos. En cuarto lugar, los abuelos ejercen el rol de ser intérpretes de la historia familiar y, por lo tanto, su interacción con los menores servirá para forjar en éstos el sentido de la tradición e historia de la familia.

Por otro lado, estudios han demostrado que los abuelos colaboran en la enseñanza de destrezas básicas a sus nietos; y que aquellos abuelos del mismo sexo sirven de modelos para ser imitados por sus nietos en el futuro. Además, los abuelos pueden proveer ayuda emocional y financiera a los padres, la cual repercutirá en beneficio de los menores.[15] En los casos de divorcio la presencia de los abuelos cobra mayor importancia ya que facilita a los menores el proceso de transición que ocurre en el entorno familiar. En síntesis, los abuelos son un puente intergeneracional que ayuda a los menores a tener una visión del futuro, conocer el pasado y tener estabilidad en la familia y en la vida en comunidad. Ellen Marrus, *Over the Hills and Through the Woods to Grandparents' House We Go: Or do We, Post-Troxel?*, 43 ARIZ. L. REV. 751, 758-764 (2001). Incluso el Tribunal Supremo de los Estados Unidos se ha pronunciado sobre la importancia de que el ordenamiento proteja la familia extendida: "[o]urs is by no means a tradition limited to

---

[15] *Véase* José Franco, *Derechos abuelo filiales en diferentes jurisdicciones*, 26 REV. JUR. U.I.P.R. 429, 585 (1992).

respect for the bonds uniting the members of the nuclear family. The tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition". *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 504 (1977). En la cultura puertorriqueña la familia extendida tiene mayor trascendencia y arraigo, ya que las familias fomentan la interrelación entre padres, hijos, abuelos, bisabuelos, primos, tíos y sobrinos.

De lo expuesto previamente, se desprende con meridiana claridad el interés del Estado en mantener estrechos lazos afectivos y de interacción entre los abuelos y sus nietos para facilitar el pleno desarrollo de los menores. Por otro lado, es indudable la facultad del Estado, en virtud de su poder de *parens patriae*, de asegurar el bienestar general de los conciudadanos mediante la legislación. *Rodríguez v. Gerena*, 75 D.P.R. 900, 901-902 (1954); Serrano Geyls, *supra*, pág. 167. La relación abuelo filial contribuye al bienestar general de los menores.

## IV

Al aplicar las normas anteriormente expuestas al recurso ante nos, de entrada es menester indicar que, contrario a lo alegado por el Procurador General, en representación del Estado Libre Asociado de Puerto Rico, en el caso ante nos es de aplicación el Art. 152A del Código

Civil. No podemos perder de perspectiva que aunque luego del divorcio entre los progenitores los abuelos paternos continuaron relacionándose con su nieto, como consecuencia de las relaciones paterno filiales, dicha situación cambió luego de que el señor Ramírez Vélez se trasladara a residir a los Estados Unidos. Fue entonces cuando el padre solicitó la modificación de las relaciones paterno filiales a los fines de que se le permitiera al menor pernoctar en fines de semana alternos en la residencia de sus abuelos paternos y que, además, se le permitiera viajar en compañía de éstos a los Estados Unidos para visitarlo. Aunque los progenitores acordaron que el menor podría viajar a los Estados Unidos a visitar a su padre en compañía de los abuelos paternos, la madre, señora Rexach, se <u>opuso</u> a que el niño pernoctara en la residencia de sus abuelos paternos.[16] En consecuencia, el 3 de julio de 2001 <u>los abuelos presentaron una solicitud de relaciones abuelo filiales</u> ante el foro de instancia.

Ante un cuadro fáctico como el de autos es aplicable el Art. 152A del Código Civil. Como bien indica la señora Rexach en su petición de *certiorari*, "[c]ontrario a lo que expresó el Procurador [General] en su ponencia ante el Tribunal de Circuito de Apelaciones, **no estamos meramente ante un caso de diferencias entre dos padres, sino que tenemos unos abuelos que invocan el derecho creado por la**

---

[16] Véase Alegato de los recurridos, pág. 4. De parte, debemos señalar que una situación fáctica similar ocurrió en *Troxel v. Granville, supra*, donde la madre deseaba limitar la relación entre sus hijas menores de edad y los abuelos paternos a una (1) visita mensual, sin que las niñas pernoctaran en la residencia de los abuelos.

**Ley [Núm.] 182**". Petición de *certiorari*, pág. 13. (Énfasis suplido.)

Luego de dejar establecida la aplicación del Art. 152A, *supra*, al caso ante nos, debemos señalar que resulta innecesario entrar a examinar la constitucionalidad del citado artículo a la luz del debido proceso de ley sustantivo. Lo anterior obedece a que podemos hacer una interpretación razonable de la legislación impugnada, teniendo como norte nuestras previas decisiones y la decisión de *Troxel v. Granville*, *supra*, sin tener que entrar a dilucidar la constitucionalidad de la ley, a tenor de nuestros pronunciamientos en *Milán Rodríguez v. Muñoz*, *supra,* pág. 618. El Profesor Raúl Serrano Geyls también se ha expresado de forma consistente con lo que hoy resolvemos al señalar que el Art. 152A, *supra*, es constitucional, pero que, "al aplicarl[o], nuestros jueces están obligados a seguir las directrices establecidas en el caso Troxel, ya que se trata de un derecho fundamental". Raúl Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, Vol. II, Universidad Interamericana de Puerto Rico, 2002, pág. 1321. Una vez más debemos aplicar la norma de decretar la inconstitucionalidad de una ley sólo cuando ello sea indispensable. *Pueblo v. Santiago Feliciano*, *supra*, págs. 407-408. En el presente recurso debemos ejercer nuestra función interpretativa para darle efectividad al propósito legislativo de salvaguardar la relación abuelo filial.

El Art. 152A, *supra*, establece que una vez disuelto el núcleo familiar por muerte, divorcio, separación o nulidad del matrimonio se les reconocerá legitimación a los abuelos para solicitar relacionarse con sus nietos cuando los padres o tutor que ejerza la patria potestad impida tales relaciones sin justa causa. En primer lugar, **nuestra legislación, a diferencia del estatuto impugnado en *Troxel v. Granville, supra*, no reconoce el derecho de visita a cualquier persona, sino exclusivamente a los abuelos.** Tal derecho no tiene rango constitucional, como el de los padres, sino estatutario, por lo cual puede imponérsele mayores limitaciones. En segundo lugar, una vez radicada la solicitud de relaciones abuelo filiales, corresponderá a los tribunales conceder o denegar la solicitud a la luz de las circunstancias particulares de cada caso. Cabe señalar, como previamente lo hicimos, que tradicionalmente se ha delegado en los tribunales estatales la función de adjudicar controversias sobre relaciones familiares, como se reiteró en *Troxel v. Granville*, *supra*. Los tribunales deben asegurarse que sus decisiones sobre estas delicadas controversias propendan al bienestar de los menores, conforme lo requiere nuestra legislación y reiteradamente lo ha señalado nuestra jurisprudencia.

Determinar cuál es el bienestar del menor no es tarea fácil ya que están envueltos factores emocionales, físicos e incluso especulativos, que en algunas ocasiones no pueden ser demostrados científicamente. Robert H. Mnookin, *In the*

*Interest of Children, Advocacy, Law Reform and Public Policy*, W.H. Freeman and Company, 1985, pág. 16. No obstante, la jurisprudencia ofrece ciertas guías para dirigir la tarea decisoria de los jueces y juezas.

En *Nudelman v. Ferrer Bolívar*, 107 D.P.R. 495, 511 (1978), señalamos ciertos <u>factores</u> que los tribunales deben considerar <u>para determinar el bienestar del menor</u> al adjudicar casos de custodia. **Algunos de dichos <u>factores</u> son igualmente aplicables al adjudicar controversias sobre relaciones abuelo filiales.** Así, es necesario que los tribunales consideren: la preferencia del menor, su sexo, edad, salud mental y física; el cariño que pueden brindarle las partes en controversia; la habilidad de las partes para satisfacer las necesidades afectivas y morales del menor; la interrelación del menor con las partes y con otros miembros de la familia; y la salud psíquica de las partes. Además, se debe considerar la razonabilidad de las relaciones solicitadas a la luz de las actividades diarias del padre o madre custodio y del menor; y la ubicación y distancia del lugar donde se desarrollarán las relaciones abuelo filiales. *Ex parte Torres*, 118 D.P.R. 469, 483 (1987). Resulta indispensable que los tribunales **también consideren** si entre los abuelos y los nietos se ha mantenido una relación afectiva estrecha o una mera relación ocasional. **Ningún factor es decisivo de por sí, por ende, habrá que sopesarlos todos.** Por otro lado, cabe señalar que los tribunales deben

exponer los fundamentos en los que fundamentan su decisión conforme los criterios antes mencionados.

**A la luz de la decisión de *Troxel v. Granville, supra*, los tribunales deben darle una <u>consideración especial</u> a la decisión de los padres de rechazar las relaciones abuelo filiales.** Esto significa que no debe imponérseles a los padres la carga de probar que las relaciones solicitadas por los abuelos serán perjudiciales para el menor. **Corresponde a los abuelos solicitantes el peso de la prueba para demostrar que tienen la aptitud para relacionarse con sus nietos a la luz de los criterios antes expuestos.** Darle consideración especial a las decisiones de los padres permite que interactúen armoniosamente los derechos fundamentales de los padres y el interés en mantener la unidad de la familia y las relaciones abuelo filiales.[17]

Cabe señalar que la jurisprudencia estatal avala nuestra interpretación del Art. 152A, *supra*.[18] En *McGovern v. McGovern*, 33 P.3d 506 (Ariz. App. Div. 2, 2001), se sostuvo la constitucionalidad de la ley de Arizona que

---

[17] Ahora bien, aunque el punto de vista de los padres debe recibir una consideración especial, también los tribunales deben velar porque tal punto de vista no sea meramente la expresión de un sentimiento de represalia por parte de uno de los padres hacia los progenitores de su ex cónyuge. Como se sabe, después de un divorcio en extremo contencioso, las partes pueden quedar emocionalmente prejuiciadas no sólo con su ex cónyuge, sino a veces también con los padres de éste. En vista de lo anterior, los tribunales deben velar porque esa animosidad no sea el motivo para oponerse a las visitas de los abuelos.

[18] *Véase* Sandra Morgan Little, *Child Custody and Visitation, Law and Practice*, Vol. III, LexisNexis, 2003, § 16.12[3], págs. 16-76 – 16-84.

reconocía a los abuelos el derecho de visita si las mismas servían al bienestar del menor. El tribunal determinó que la decisión del Tribunal Supremo federal en *Troxel v. Granville, supra,* solamente tuvo el efecto de establecer que las decisiones de los padres merecen una consideración especial por parte de los tribunales y que el estatuto de Arizona era perfectamente compatible con tal pronunciamiento. Además, los tribunales de Arizona deben utilizar los criterios establecidos en su legislación para determinar el bienestar de los menores. De igual forma, en *Sicking v. Sicking*, 996 P.2d 471 (Okla. Civ. App. Div. 1, 1999), se sostuvo una orden permitiendo a los abuelos paternos relacionarse con su nieta. La madre de la menor instó un recurso de *certiorari* ante el Tribunal Supremo federal, pero fue declarado no ha lugar.[19] *Dorwart v. Sicking*, 531 U.S. 876 (2000). Véanse además *In re Interest of C.M.V.*, Núm. 04-03-009-CV (Tex. App., 31 de marzo de 2004); *In re Parentage of C.A.M.A.*, 84 P.3d 1253 (2004).

A la luz de todo lo discutido anteriormente, **resolvemos que los tribunales deben adjudicar las peticiones de relaciones abuelo filiales conforme a los <u>criterios</u> mencionados y dándole una <u>consideración especial</u> al punto de vista de los padres**. Hoy reiteramos la norma a los efectos de que "[l]os tribunales debemos interpretar los estatutos tomando en consideración el propósito social que los

---

[19] Esto ocurrió el 2 de octubre de 2002, es decir, después de la decisión de *Troxel v. Granville*, *supra*, que fue emitida el 5 de junio de 2000.

inspiró, dándoles un sentido lógico a sus diversas disposiciones y supliendo sus posibles deficiencias cuando sea necesario", de manera que, en lo posible, pueda sostenerse su constitucionalidad y lograr que la legislación cumpla su función de aliviar los males sociales que han sido identificados por el legislador. *Alonso García v. Ramírez Acosta*, *supra*.

## V

Por los fundamentos antes expuestos, se confirma la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

MIRIAM NAVEIRA MERLY
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jennifer Marie Rexach

    Peticionaria

       v.

                      CC-2002-483

Carlos Javier Ramírez Vélez

    Recurrido

SENTENCIA

San Juan, Puerto Rico a 15 de junio de 2004

Por los fundamentos expuestos en la Opinión que antecede, se confirma la sentencia emitida por el Tribunal de Apelaciones y se devuelve el caso al foro de instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió una Opinión Disidente. El Juez Asociado señor Hernández Denton emitió una Opinión Disidente. El Juez Asociado señor Rivera Pérez disiente sin opinión escrita.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jennifer Marie Rexach

    Demandante-peticionaria

       vs.                    CC-2002-483      CERTIORARI

Carlos Javier Ramírez Vélez

    Demandado-recurrido

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

    San Juan, Puerto Rico, a 15 de junio de 2004

    La Opinión mayoritaria emitida no amerita mucho análisis. La misma no pasa de ser una mera opinión consultiva emitida, naturalmente, a destiempo. Esto es, disentimos por entender que la controversia atendida en el presente caso no cumple con el requisito de madurez requerido por nuestro ordenamiento jurídico a los fines de que este Tribunal pueda entrar a dilucidar la misma. Asuntos de la Mujer v. Srio. de Estado, 109 D.P.R. 715, 722 (1980). Véase, además: Poe v. Ullman, 367 U.S. 497, 503-505, 6 L. Ed. 2d 989, 81 S.Ct. 1752, 1756-1757; Blanchette v. Connetticutt General Ins. Corps., 419 U.S. 102, 138-140, 42 L.Ed.2d 320, 95 S. Ct. 335, 356-357

(1974); Mangual v. Rotger-Sabat, 317 F. 3d 45, 59 (1er Cir. 2003). Ello en vista de que, a este momento, el foro primario no ha resuelto conceder las visitas aquí en controversia, ni ha dado indicios de que concederá las mismas o el modo en que éstas procederán.

Un simple análisis de las sentencias emitidas por ambos foros inferiores es suficiente para advertir que éstos se limitaron a considerar, de su faz, la constitucionalidad del Artículo 152A de nuestro Código Civil sin que aún hayan entrado a aplicar el mismo. Ello, indiscutiblemente, se diferencia en forma sustancial de los hechos que tuvo ante sí el Tribunal Supremo de los Estados Unidos al resolver el caso de Troxel v. Granville, 530 U.S. 57 (2000), donde los foros inferiores ya habían actuado bajo, y/o aplicado, el estatuto bajo análisis.

En consecuencia, y como bien señala el aquí recurrido, en cuanto al asunto de las visitas de parte de los abuelos, el caso hoy ante nuestra consideración no presenta daño alguno a la parte peticionaria, ni la inminencia del mismo, elementos necesarios para que la controversia que se pretende resolver se considere madura. Evidentemente, y a todas luces, la Opinión mayoritaria no pasa de ser una opinión consultiva. Véase: Comisión de Asuntos de la Mujer v. Srio. de Justicia, ante, a la pág. 721; Véase, además: Poe v. Ullman, ante, a la pág. 503-505; Blanchette v.

Connetticutt General Ins. Corps., ante, a la pág. 138-140;

Mangual v. Rotger-Sabat, ante, a la pág. 59.


                        FRANCISCO REBOLLO LÓPEZ
                            Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Jennifer Marie Rexach

  Peticionario

    v.                                    CC-2002-483

Carlos Javier Ramírez Vélez

  Recurrido

Opinión Disidente emitida por el Juez Asociado señor Hernández Denton

San Juan, Puerto Rico, a 15 de junio de 2004.

Aunque la Opinión de este Tribunal tiene el propósito encomiable de conciliar el Art. 152A, de nuestro Código Civil, 31 L.P.R.A. 591a, con lo resuelto por el Tribunal Supremo de los Estado Unidos en Troxel v. Granville, 530 U.S. 57 (2000), sus pronunciamientos, esencialmente, colocan a este Tribunal al margen del contenido mínimo constitucional dictado por ese foro al interpretar la Constitución de los Estados Unidos. Por ello, disentimos.

I

El caso de marras, sin lugar a dudas, comprende un asunto neurálgico para nuestro entorno familiar y cultural. La médula de la

controversia ante nos gira en torno a la constitucionalidad de una ley que le confiere legitimación jurídica a los abuelos para solicitar períodos de visitas con sus nietos luego de la disolución del núcleo familiar, ya sea por la muerte de uno de sus padres, o por el divorcio, separación o nulidad del matrimonio entre estos. En síntesis, el Art. 152A del Código Civil de Puerto Rico, 31 L.P.R.A. 591a, prohíbe que los padres o el tutor que ejerza la patria potestad y custodia sobre un menor no emancipado impida, sin justa causa, que éste se relacione con sus abuelos. En ese caso, se le reconoce legitimación a los abuelos para "ser oídos ante el juez quien decidirá lo procedente tomando en consideración las circunstancias particulares de cada caso y los intereses y el bienestar del menor". *Id.*

A pesar de la letra clara de dicho estatuto, y del cuadro fáctico del caso ante nos, la Opinión del Tribunal decide validar las decisiones de los foros inferiores mediante las cuales se le reconoció legitimidad a los abuelos paternos del menor para acudir al tribunal y solicitar unas visitas más extensas con su nieto. Ello, a pesar de que en el caso de autos nunca se impidió la relación abuelo-filial. De hecho, en el caso de marras, el menor y sus abuelos se han relacionado constantemente a través de los años y, en la actualidad, la madre no pretende impedir que así continúe siendo.

Así, de entrada, debemos recalcar que al caso de autos no le es aplicable el artículo en cuestión. Si bien el

artículo 152A, *supra*, le otorga a los abuelos legitimación para acudir al tribunal y solicitar relacionarse con sus nietos, dicho derecho únicamente se activa cuando los padres <u>impiden</u>, sin justa causa, que el menor se relacione con sus abuelos. En el caso de marras, la madre del menor nunca <u>impidió</u> que éste se relacionara con sus abuelos paternos sino que, meramente se opuso a la solicitud de éstos de que el menor pernoctara en su casa en fines de semanas alternos (a partir del viernes a las cinco de la tarde 5:00 p.m. hasta el domingo a la misma hora), y que el fin de semana que los abuelos no tuvieran al menor, pudiesen verlo una vez durante la semana. El hecho de que la madre no acceda a la petición de los abuelos de que su hijo pernocte en casa de éstos en fines de semanas alternos no es indicativo de que la madre impida una relación abuelo-filial. Los abuelos **no** tienen derecho a que sus nietos pernocten en su casa. Ello es pretender que los abuelos tengan los mismos derechos que un padre no custodio.

Es decir, no estamos ante el caso de un padre que se opone sin justa causa a las relaciones abuelo-filiales, sino que más bien estamos ante un caso en el que un padre custodio (en este caso una madre) y unos abuelos, no coinciden en cuanto a la magnitud o extensión de dichas visitas.

En vista de que el Art. 152A de nuestro Código Civil, *supra*, específicamente dispone que la solicitud de un abuelo para ser escuchado ante un juez procede únicamente cuando el

padre o tutor que ejerza la patria potestad y custodia sobre el menor impida, sin justa causa, la relación entre éstos, y que ese no es el caso de autos, hubiésemos, sin más, descartado el presente pleito.

No obstante, la interpretación que hace la Opinión mayoritaria del caso de Troxel v. Granville, *supra*, nos obliga a adentrarnos a otros aspectos de esta controversia.

II

TROXEL V. GRANVILLE

En Troxel v. Granville, *supra*, se impugnó la constitucionalidad de un estatuto de Washington que permitía que cualquier persona entablara una solicitud de visita en cualquier momento siempre y cuando dicha visita sirviera el mejor interés del menor. En esencia, la controversia de dicho caso se originó cuando unos abuelos, cuyo hijo había fallecido, presentaron una petición en el tribunal de Washington en la cual solicitaron que se les reconociera su derecho de visita con sus dos (2) nietas, a la luz de la legislación local antes mencionada, en vista de que la madre quería limitar las visitas a una vez al mes, y sin que éstas pernoctaran en casa de sus abuelos. El Supremo federal no invalidó de su faz el estatuto impugnado pero determinó que el mismo era inconstitucional en su aplicación a la controversia particular de las partes en dicho caso. Principalmente, señaló el foro federal que el estatuto de Washington era excesivamente amplio ya que le otorgaba legitimación activa para solicitar visitas a *cualquier*

persona en *cualquier* circunstancia, cuando dichas visitas propendan al *mejor bienestar del menor.*

En la discusión de dicho caso, el foro federal expresó, entre otras cosas, que el tribunal de primera instancia de Washington incidió al no darle una consideración especial a la decisión de la madre de no ampliar la frecuencia de las visitas. Consecuentemente, el Supremo federal detalló varios factores que tomados en conjunto violaron el derecho fundamental que tiene un padre para tomar determinaciones en cuanto a la crianza de sus hijos. Estos son:

1) que la ley impugnada no contenía un requisito a los efectos de que el juez le adjudicara un "peso especial" a la determinación del padre en cuanto a qué éste entendía era lo mejor para el menor;

2) que el juez de instancia no actuó bajo la presunción de que un padre apto ("fit") actúa naturalmente en consideración al mejor beneficio de su hijo;

3) que el juez de instancia no tomó en consideración el hecho de que la madre del menor estaba dispuesta a permitir ciertas visitas;

4) que el juez de instancia no tomó en consideración si las visitas entre el nieto y los abuelos interferían en la relación de padre e hijo;

5) que el "mejor interés del menor" (basado únicamente en lo que el juez determine que es el mejor interés del menor) **no** puede ser utilizado para ir por encima de la decisión de un padre custodio.

De dicha discusión se desprende que, un análisis ponderado sobre la constitucionalidad de una ley que concede el derecho a una tercera persona para solicitar visitas con un menor, no puede dejar de tomar en consideración estos factores. Si un estatuto que regula el derecho de visita de unos abuelos con sus nietos no toma en consideración los factores anteriormente discutidos, el mismo claramente sería inconstitucional, ya sea de su faz o en su aplicación, a menos que el foro judicial lo interprete de modo que sea consistente con lo resuelto en Troxel, *supra*.

El último factor señalado es particularmente importante ya que en nuestra jurisdicción, de ordinario, las determinaciones en casos que involucren situaciones con menores de edad son analizadas bajo el palio del "mejor interés del menor". No obstante, eso es precisamente lo que condena el máximo foro federal; que la determinación de un juez de "lo que es mejor para el menor" pueda ir por encima de lo que dice un padre custodio apto. A esos efectos Troxel, *supra*, resolvió que:

> [T]he Washington Statue places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interest, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely an the judge's determination of the child's best interest. Troxel v. Granville, *supra*, a la pág. 9.

...

> [T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a "better" decision could be made. <u>Troxel v. Granville</u>, *supra*, a la Pág. 12.

Nos parece evidente que el Tribunal Supremo federal constriñe el análisis constitucional de un estatuto de visita a que se cumpla con lo antes esbozado. Es decir, un juez **no puede hacer una determinación de lo que éste entiende es mejor para el menor y suplantar lo que el padre custodio apto estima beneficia a su hijo o hija**.

                                  III

La Opinión de este Tribunal intenta armonizar nuestro estatuto con la decisión de <u>Troxel v. Granville</u>, *supra*, con el propósito de hacer una interpretación que permita soslayar el argumento constitucional. No obstante, al hacerlo, establece criterios que a nuestro juicio son contrarios a dicha decisión federal.

Así sucede, por ejemplo, cuando la Opinión mayoritaria señala que:

> Por supuesto, ningún derecho fundamental es absoluto, por ende, los derechos de los padres pueden limitarse en aras de proteger un interés apremiante del Estado, <u>como lo es el bienestar de los menores</u>. Opinión mayoritaria a la Pág. 15. (Énfasis nuestro)

O cuando señala que:

> Los tribunales deben asegurarse que sus decisiones sobre estas delicadas controversias <u>propendan al bienestar de los menores,</u> conforme lo requiere nuestra legislación y reiteradamente lo ha señalado nuestra

jurisprudencia. Opinión mayoritaria a la Pág. 30. (Énfasis nuestro)

Cuando la Opinión del Tribunal dispone que los jueces en casos como el de autos tendrán que tomar en consideración *el mejor bienestar del menor* al emitir sus decisiones, claramente está violando lo dispuesto en <u>Troxel v. Granville</u>, *supra*.[20]

Igualmente, la Opinión de este Foro nos coloca al margen de la decisión federal cuando establece que los tribunales deberán considerar los siguientes factores al adjudicar controversias sobre relaciones abuelo filiales: la preferencia del menor, su sexo, edad, salud mental y física; el cariño que puedan brindarle las partes en controversia; la habilidad de las partes para satisfacer las necesidades afectivas y morales del menor; la interrelación del menor con las partes y con otros miembros de la familia; y, la salud psíquica de las partes. Según señala la Opinión del Tribunal, dichos factores fueron expuestos por esta Curia en aras de facilitarle a los jueces de primera instancia su encomienda en casos en que lo que está en controversia es la *custodia* de un menor. Difícilmente podemos concebir que los mismos criterios que se utilizan en casos en los cuales unos <u>padres</u> se disputan la <u>custodia</u> de un menor, se utilicen para adjudicar la petición de unos abuelos a visitar a su nieto, <u>por encima de la determinación de un padre custodio apto, y</u>

---

[20] Nótese, que este no es un caso en el que se alega que la madre no es apta para tomar decisiones en interés de su hijo, en cuyo caso sí se le reconoce al Estado una amplia potestad para—y hasta el deber de—intervenir conforme al mejor bienestar del menor.

del derecho fundamental que tiene ese padre para llevar a cabo dicha determinación.[21]

Más aun, según es conocido, dichos factores son los que de ordinario considera un juez al indagar sobre lo que repercutiría en el mejor bienestar del menor, por lo que es igualmente incorrecto aplicarlos a casos como el de autos. Como ya mencionáramos, dicho raciocinio, el del mejor bienestar del menor, no puede ser utilizado para ir por encima de la decisión de un padre custodio apto. Troxel v. Granville, *supra*, así lo establece claramente.

La decisión de este foro tiene el efecto de controvertir lo dispuesto en Troxel v. Granville, *supra*, en cuanto a que se le debe otorgar una gran deferencia a los padres y respetar el derecho fundamental que éstos tienen de criar a sus hijos. De ahora en adelante, según dispone la Opinión del Tribunal, se le permite a los abuelos cuestionar ante los tribunales del País la extensión de las visitas con sus nietos, aun en situaciones en que los padres **no impiden** la relación entre éstos. Esta no fue la situación contemplada por la Asamblea Legislativa al aprobar el Art. 152A de nuestro Código Civil.

Según Opinión del Tribunal, luego de que el juez de instancia considere la posición de los padres---quienes obviamente se oponen a la solicitud de los abuelos, de otro

---

[21] Cabe recordar que los padres tienen derecho a relacionarse con sus hijos, no así sus abuelos. Lo que el Art. 152A establece, es el derecho de dichos abuelos a ser escuchados y a solicitar visitas. No obstante, los abuelos no tienen un derecho fundamental a relacionarse con sus nietos.

modo no estarían ante el tribunal---éste hará una determinación de lo que estime mejor para el menor. Así, la Opinión mayoritaria permite que, en efecto, sea un juez quien decida (en última instancia) lo que más le conviene a un menor, aun en situaciones donde la salud física, psíquica o emocional del menor no está en entredicho, y cuando no ha habido una alegación de que la madre no está capacitada para tomar decisiones es interés de su hijo menor.

IV

En la medida en que la Opinión mayoritaria de este Tribunal descarta lo resuelto en el ámbito federal, y expresamente sostiene que "los tribunales deben asegurarse que sus decisiones sobre estas delicadas controversias propendan *al bienestar de los menores",* la misma atenta contra el principio doctrinal que exige una concordancia entre dicho Tribunal y el nuestro en el ámbito de las garantías constitucionales.

En vista de que la Opinión del Tribunal entra a discutir un estatuto que claramente no se concibió para circunstancias como la de autos en la que el padre custodio no impide la relación abuelo-filial y que, además, se aparta del estándar mínimo mandatorio para esta jurisdicción, según esbozado en la Opinión de Troxel v. Granville, *supra*, disentimos.


FEDERICO HERNÁNDEZ DENTON
JUEZ ASOCIADO