Velázquez Cajigas, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
La Federación de Maestros de Puerto Rico (Federación) solicita que revisemos la sentencia emitida en revisión del laudo de arbitraje Núm. L-06-038 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Señala que incidió el tribunal al dejar sin efecto el laudo que había declarado con lugar la querella. Examinados los hechos y la controversia entre las partes, expedimos el auto de certiorari, confirmamos la denegatoria de la querella presentada y modificamos la sentencia para desestimarla con perjuicio.
*1100 I
El trámite de la controversia hasta el presente es como sigue. El 6 de mayo de 2004, el Sr. Luis Fiol Fumero, maestro de la Escuela Alcides Figueroa de Añasco y Delegado de Taller de la Federación en dicha escuela, presentó una querella bajo el Convenio Colectivo vigente entre la Federación y el Departamento de Educación. Alegó “que el 30 de abril de 2004, a las 12:45 p.m., se violó el Artículo 24.07 del Convenio Colectivo
Siguiendo el trámite dispuesto para resolver querellas en el Convenio Colectivo, el 14 de octubre de 2004, la querella pasó a la etapa de Arbitraje de Quejas y Agravios ante la Oficina de Conciliación y Arbitraje de la Comisión de Relaciones del Trabajo del Servicio Público, asignándosele el Núm. AQ-04-525. El árbitro emitió una resolución “donde expresafba] que al analizar los Exhibits estipulados por las Partes no ten[ía] los hechos de este caso claros por lo que ordenfó] una vista de arbitraje para el 9 de noviembre se 2005. ” (Ap. Pág. 28). A la vista citada, compareció la representación legal de la Federación acompañada por el querellante, Sr. Luis Fiol Fumero, y solicitó someter el caso mediante memorando de derecho, sin desfilar prueba ante el árbitro. El caso quedó sometido para adjudicación el 2 de diciembre de 2005. La querella reclama que el Departamento había violado la Sec. 24.07 dEl Artículo XXIV del Convenio Colectivo de 20 de agosto de 2002. El acuerdo de sumisión en el foro de arbitraje fue como sigue: 

“Acuerdo de Sumisión: Determinar a la luz. del convenio colectivo si la asignación de cursos se debe otorgar año tras año según la antigüedad, en la categoría, especialidad y nivel. ”

El Convenio Colectivo dispone en la Sec. 34.08(C) que el laudo se emita conforme a derecho. El 21 de abril de 2006, el árbitro emitió el Laudo Núm. L-06-038, disponiendo que el Departamento violó la Sec. 24.07 del Convenio “al no permitir que los maestros(as) ejercieran la selección de los cursos disponibles por el principio de antigüedad en la Organización Escolar del año 2004-2005.” Mediante el Laudo ordenó que “fu]na vez el Comité de Organización Escolar establezca el programa de clases [el Director Escolar] permita a los maestros (as) seleccionar los cursos que impartirán, conforme el principio de antigüedad en la categoría, especialidad y nivel, en estricto cumplimiento con la sección 24.07” del Convenio Colectivo.
Inconforme, el Departamento solicitó ante el Tribunal de Primera Instancia la revisión del laudo. El tribunal emitió sentencia el 23 de octubre de 2006 en la que resolvió dejar sin efecto el laudo. La sentencia se basó en que el árbitro violó el debido proceso de ley, al diseñar un remedio que tuvo el efecto de afectar adversamente a maestros que no estuvieron representados en los procedimientos de adjudicación de la querella.
La Federación nos solicita la revisión de la sentencia del Tribunal de Primera Instancia señalando que:
“Erró la Honorable Juez, al revocar la determinación del Árbitro que, conforme al acuerdo de sumisión conjunta entre las partes que le dan jurisdicción a éste, se circunscribió a ellas conforme a derecho y decidió revocar basando su argumento en controversias no cuestionadas o en todo caso marginales a los señalamientos de errores presentados. A su vez basados en planteamientos hipotéticos e infundados lo que constituye una opinión consultiva. ”
El Procurador General ha comparecido en representación del Departamento de Educación. Procedemos a resolver.
II
El laudo en el caso de autos, Laudo L-06-038, es muy parco en cuanto a los hechos. Sus determinaciones de hechos fueron como sigue:

“IV. HECHOS

*1101
1. El 6 de marzo [de 2004], el Querellante[, Sr. Luis Fiol Fumero,] sometió un agravio ante Paso I. Alegó en el mismo que el Director Escolar no cumplió con la Sección 24.07 del Convenio. En el Paso I, el Querellante expresó que no se cumplió con la Sección 24.07 del Convenio Colectivo al no asignar los cursos siguiendo el principio de antigüedad. Solicitó como remedio que se asigne[n] todo[s] los cursos por antigüedad.

2. El 19 de mayo, el Director Escolar contestó el Paso I presentado por el Querellante utilizando el Formulario de Adjudicación de Querellas Paso I. Determinó que no procede la querella.

3. El 21 de mayo, el Querellante presentó su agravio ante Paso II.

4. El 1 de octubre, [e]l Comité de Conciliación emitió la Resolución Núm. MA-04-03-1740 donde notificaron que no llegaron a un acuerdo. ”

Como se puede observar, los llamados hechos fueron expresados en término de figuras procesales y jurídicas (Paso I, Paso II, Formulario de Adjudicación de Querellas, querella, agravio, etc.) de forma tal que para conocer la situación de hechos corresponde examinar y analizar un grupo de documentos a que hace referencia el laudo. Los documentos están denominados en términos procesales jurídicos, tales como “Exhibit en Conjunto Núm. 3”, y éstos no se incluyeron, o no se identificaron como tales, entre los documentos del apéndice del recurso de certiorari. El Formulario de Adjudicación de Querellas utilizado en el Paso I es el tínico documento del apéndice que contiene información sobre los hechos que motivaron la querella, segtín alegados por la parte querellante y la parte querellada. No obstante, en el mismo, el querellante tampoco alega hechos, limitándose a conclusiones de derecho. En la primera página de éste (Ap. pág. 184) los hechos alegados por el querellante se expresan como sigue: “ 1. Indica el querellante que el 30 de abril de 2004 a las 12:45 p.m. se violó el Artículo 24.07 del Convenio Colectivo.” Esta es la única alegación del querellante. Véase que no hace referencia a un hecho concreto, sino que es meramente la conclusión de derecho que el querellante solicita que el adjudicador adopte.
Continuando a la página 2 del Formulario de Adjudicación de Querellas Paso I (Ap. pág. 185), las alegaciones del querellante siguen el mismo patrón de consistir de conclusiones de derecho. Lo más concreto en cuanto a hechos que alega el querellante, Luis Fiol Fumero, es lo siguiente:

“Interpretación de las alegaciones conforme a lo dispuesto en el Convenio

El Delegado de Taller Sr. Luis Fiol Fumero alega que se violó el Convenio Colectivo porque no se asignaron todos los cursos por antigüedad en la categoría y especialidad. El Departamento de Educación alega que la asignación de los cursos estará limitada a los puestos vacantes y que el Principio de antigüedad se reconoce en los puestos vacantes.

Se adiciona el hecho de que la representación legal de la Federación solicitó no desfilar prueba ante el árbitro, limitándose a presentar su alegato de derecho. Es norma trillada, conocida por todos los abogados litigantes, que los alegatos de la representación legal no constituyen prueba en la que el tribunal pueda basar la disposición del caso. ”

Lo más concreto en término de hechos que hemos localizado en el expediente del presente recurso se encuentra en las alegaciones del Director Escolar en el Paso I. Éste expone, en parte, como sigue (Ap. pág. 186):
“2. La Carta .Circular Núm. 12-2002-2003 [provee bajo] Disposiciones generales inciso I, letra d [que será] Reconocido el principio de antigüedad en puestos vacantes. De permitirse lo que propone el delegado de *1102 Taller de que se asigne[n] todos los cursos por antigüedad en categoría y especialidad, se vería sumido en un verdadero caos. El Convenio Colectivo no dispone cómo se harán las asignaciones de cursos ni qué pasos a seguir. El Artículo 2[4].0[7] guarda silencio sobre qué hacer cuando, como en el caso que tenemos ante nuestra consideración, el curso que interesa un maestro ya lo ejerce u ocupa otro maestro, y ambos son miembros de la Unidad Apropiada. Por tal motivo, la sección 24.07 no puede interpretarse por si sola. (Énfasis suplido.)
De los hechos y planteamientos expuestos en este caso se puede concluir que el convenio vigente entre las partes no contempla el desplazo o “bumping” de los miembros de ¡a Unidad Apropiada de sus puestos. Se puede entender que el convenio lo que hace en todo el texto es proteger a sus miembros dentro de sus plazas, al exigir el requisito de antigüedad en la categoría, nivel y especialidad para la asignación de los cursos, pero lo anterior no significa que se pueda entender que el convenio colectivo permite el desplazo de los miembros de la Unidad Apropiada de sus puestos. Máxime cuando éstos, al ser incumbentes de sus puestos, tienen intereses propietarios adquiridos. (Énfasis suplido.)
Pasamos a examinar las disposiciones contractuales del Convenio Colectivo y las normas del Departamento de Educación pertinentes a la situación de autos.
El Convenio Colectivo entre la Federación de Maestros y el Departamento de Educación, fue efectivo desde el 20 de agosto de 2002, con una vigencia de tres años. El Art. X del mismo (Ap. pág. 50) dispone:

“ARTÍCULO X DERECHOS ADQUIRIDOS:

El Departamento de Educación garantizará todos los derechos adquiridos que disfrutaban los miembros de la Unidad Apropiada a la vigencia del Convenio. ”

Por su parte, las Secciones 24.06 y 24.07 dEl Artículo XXIV del Convenio Colectivo (Ap. pág. 69) disponen:

“ARTÍCULO XXIV ORGANIZACIÓN ESCOLAR

Sección 24.06 El Comité de Organización no podrá tomar decisiones que contravengan los derechos adquiridos en la categoría o especialidad.

Sección 24.07 La asignación de cursos se regirá por el principio de antigüedad en la categoría, especialidad y nivel. ”

El Secretario de Educación, en el ejercicio de los Deberes y Facultades que le confiere la Ley Orgánica del Departamento de Educación de Puerto Rico, Ley Núm. 149 de 15 de julio de 1999, emitió el 7 de febrero de 2003 la Carta Circular Núm. 12-2002-2003, en adelante, Carta Circular 12 (Ap. págs. 146-158). Ésta se titula Principios y Normas Generales Para la Organización de las Escuelas Secundarias de la Comunidad y Requisitos de Graduación. En la misma, “tomando en consideración las disposiciones dEl Artículo XXIV del Convenio Colectivo, se exponen los principios y normas para la preparación de la organización escolar”. (Ap. pág. 146) Al considerar las normas aplicables al personal docente, dispone la sección B(7)(g) (Ap. pág. 154):

“B. Normas Para la Organización Escolar

7. Personal Docente

g. La asignación de cursos se regirá según dispone el Convenio Colectivo. ”

*1103 Luego de presentar las “Normas para la Organización Escolar” (Ap. págs. 147-157), la Carta Circular incluye un grupo de normas bajo el acápite Disposiciones Generales, entre las cuales las Secciones C(l)(d) y C (3) disponen:

“C. Disposiciones generales

1. Las escuelas deben haber cumplido con los siguientes requerimientos previo a la ratificación de la organización escolar:

d. Reconocido el principio de antigüedad en puestos vacantes. (Énfasis suplido.)

3. El Comité de Organización Escolar no puede tomar decisiones que contravengan los derechos adquiridos del personal en su categoría o especialidad y las normas del Departamento de Educación.” (Énfasis suplido.)
De una lectura integral de la Carta Circular 12-2002-2003, supra, se desprende que el concepto “Organización Escolar" se refiere a un plan que dispone cuáles cursos y cuántas secciones de cada uno de éstos se ofrecerán durante el año escolar en esa escuela, especificando para cada sección de cada curso en cual de los siete períodos de tiempo del día escolar se ofrecerá y el maestro que lo enseñará. Desde el punto de vista de un maestro, el plan de Organización Escolar le asigna en el período 1 enseñar tal curso, en el período 2 enseñar tal otro curso, hasta especificar todo el día escolar. De los siete períodos en que se divide el día escolar, cinco (5) se dedican a enseñanza, uno (1) es para capacitación profesional y uno (1) se denomina período institucional (Sec. B(7)(b), Ap. pág. 154). Desde la perspectiva de un estudiante, el plan de organización escolar le describe los posibles programas de clases, que han sido diseñados para permitirle cumplir con los requisitos de graduación, indicándole para el primer período el curso, el maestro y el salón de clase, siguiendo en forma similar para cada uno de los períodos del día escolar.
El plan de “Organización Escolar” implica que a cada uno de los maestros se le asignan cinco secciones, las cuales pueden consistir en términos de la variedad de cursos incluidos, desde un mismo curso repetido cinco veces durante el día escolar, hasta enseñar una sección de cinco cursos diferentes. Los hechos, según se desprenden del expediente del presente recurso, se limitan a que el querellante, Sr. Luis Fiol Fumero, solicitó al Director de la Escuela, Sr. René Ruiz, que le asignara para el próximo año escolar un curso en particular, que estaba asignado a otro maestro y el Director Escolar, luego de considerarlo, no accedió a asignárselo. El querellante, Sr. Luis Fiol Fumero alegó que dicha actuación por el Director Escolar violó el Convenio Colectivo porque él tiene mayor antigüedad en la categoría, especialidad y nivel que el maestro que tenía asignado el curso que pretendía dar para el año escolar próximo. No existe información sobre si su pedido incluyó el especificar cuál de los cinco cursos que hasta entonces tenía asignados el Sr. Luis Fiol Fumero, éste pretendía que le quitaran. Del expediente también inferimos que el maestro que tenía asignado el curso que interesaba el Sr. Luis Fiol Fumero para el próximo año fiscal estaba enseñando dicho curso en el presente año y la práctica pasada consistía en asignarle a cada maestro para el próximo año los mismos cursos que enseña en el año que inmediatamente precede. 
En tanto la antes descrita situación se desprende del expediente, lo que aquí resolvemos se limita a dicho cuadro de hechos. Nuestra función adjudicativa, al igual que era la del árbitro y del Tribunal de Primera Instancia, se limita a resolver controversias concretas a base de: (1) El Convenio Colectivo, y (2) El estado de derecho vigente en nuestra jurisdicción, ya que se requería que el laudo fuera emitido conforme a derecho. Ello no permite adjudicar controversias hipotéticas; la doctrina de justiciabilidad prohíbe a los tribunales emitir opiniones consultivas. Rexach v. Ramírez, 162 D.P.R. 130; Ortiz v. Panel F.E.I., 155 D.P.R. 219, 252 (2001); E.L.A. v. Aguayo, 80 D.P.R. 552, 558-560 (1958). Un acuerdo de sumisión no1 puede concederle al árbitro jurisdicción para resolver una controversia más amplia que la que los hechos presentan. “La ausencia de jurisdicción no es susceptible de ser subsanada, ni las partes pueden voluntariamente *1104 otorgarle jurisdicción sobre la materia a un tribunal". (Énfasis suplido.) Maldonado v. Junta, 2007 J.T.S. 92; Vázquez v. A.R.P.E., 128 D.P.R. 513 (1991).
El concepto de antigüedad (“seniority”) ha tenido un extenso desarrollo en el derecho laboral. Este actúa como una limitación a la discreción gerencial, pero su impacto específico depende de la legislación particular que se esté considerando y, cuando existe un convenio colectivo, de las cláusulas específicas que hagan referencia al concepto de antigüedad, según antigüedad sea definida para esa situación particular. En cuanto a los empleados se refiere, antigüedad define derechos de unos empleados versus otros, considerándose lo usual que ésta favorece a los empleados de mayor tiempo en el empleo con mayores beneficios que los de menos. La utilización del criterio de antigüedad al caso específico en este caso requiere una definición operacional libre de ambigüedades, o sea, un algoritmo o fórmula que permita una determinación objetiva, que sea aceptada por todas las partes envueltas: el patrono, la unión y los empleados desfavorecidos por la definición.
La Sec. 24.07, supra, hace referencia al “principio de antigüedad en la categoría, especialidad y nivel”, pero dicho término no se define en el resto del Convenio Colectivo. El laudo L-06-038 que fue revisado por el tribunal, trata de remediar esta deficiencia haciendo referencia a la Sec. 19.01 del Convenio Colectivo. Dicha sección provee como sigue:

“Sección 19.01 La Federación reconoce que en términos de los registros de elegibles, procesos de nombramientos, reasignaciones, traslados y reubicaciones, reingresos y cesantías, existen leyes, reglamentos, cartas circulares y memorandos que regulan estos procedimientos. Las partes acuerdan incorporar para éste y el año escolar 2000-2001, el texto y procedimientos de los documentos antes mencionados. Disponiéndose que para los años escolares siguientes las partes integrarán un comité con facultad para negociar y acordar estipulaciones que podrán modificar dichos documentos en o antes del 30 de septiembre del año 2000. ” 

El Convenio, aunque las reconoce como contractualmente vinculantes, ni siquiera especifica las cartas circulares particulares a que se refiere. Sin más justificación para ello, el Laudo L-06-038 hace referencia aúna carta circular particular, la Carta Circular 13-2002-2003, de 24 de febrero de 2003, fecha posterior a la firma del Convenio. Dicha carta circular hace referencia a antigüedad en los incisos 6 y 7 de la Parte I (Ap. págs. 162-163) como sigue:

“6. ... [CJuando exista conflicto ... prevalece el criterio de antigüedad según se define en el inciso 7 de la parte I de esta Carta Circular.

7. Al llevar a cabo la reubicación de los maestros, se tomarán en consideración los criterios establecidos en el orden siguiente:

a. fecha en que el maestro adquirió status permanente en la categoría correspondiente;

b. total de años de experiencia de trabajo en el sistema docente público;

c. preparación académica adicional en la especialidad en que se desempeña el maestro. ”

Aunque la citada sección 7 de la parte I de la Carta Circular 13-2002-2003 se limita a mencionar los tres factores a considerarse, sin especificar cómo se combinarán para llegar a una determinación de la antigüedad de un maestro particular, de su sosegada lectura no podemos concluir que autorice la provocación de una vacante, lo que en el mundo laboral también se conoce como “Bumping”, para reubicar un. maestro que interese una plaza específica ya ocupada y la reclame en mérito de su antigüedad.
*1105 En la situación de hechos que hemos asumido para propósito de análisis, existen dos consideraciones en conflicto. La primera es el derecho del maestro que ocupa la plaza de mantener sus derechos adquiridos, que incluyen el enseñar el curso asignado previamente, el cual se fundamenta en la doctrina del derecho laboral usualmente denominada Prácticas Pasadas y, además, en el Art. X y la Sec. 24.06 del Convenio Colectivo. Al interpretar un convenio colectivo ha de tomarse en cuenta no solamente lo que éste expresamente provee, sino también aquellas políticas y prácticas que la empresa consistentemente ha seguido en el pasado. Cuando dichas prácticas: (1) representan un patrón de conducta claro y consistentemente seguido; (2) el cual se ha repetido un número sustancial de veces; y (3) que ha tenido la aceptación y se ha considerado una práctica legítima por ambos, la empresa y los empleados afectados, entonces dichas prácticas se consideran Prácticas Pasadas. Si el convenio colectivo no rechazó y modificó expresamente dichas prácticas, se considera que los empleados tienen el derecho a que las mismas continúen, o sea, que se consideren implícitamente incorporadas en el convenio colectivo aunque no se mencionen expresamente en el mismo. En el caso de autos, en el pasado, al prepararse el plan de organización escolar, se ha seguido como una norma aceptada por los maestros y el Departamento a través de los años que se le asignará al maestro los mismos cursos que enseña en el año previo. Debido a la consistencia con que se ha aplicado dicha Práctica Pasada, ésta es un derecho adquirido del empleado que el patrono viene obligado a observar aunque no se exprese como tal en el Convenio Colectivo, considerándose implícito en el mismo. Ello se refuerza por lo provisto en el Artículo X (diez) del Convenio Colectivo, supra, al efecto de que el Departamento “garantizará todos los derechos adquiridos que disfrutaban los miembros de la unidad apropiada a la vigencia del Contrato”. Además, la Sec. 24.06 del Art. XXIV del Convenio dispone que “[e]l Comité de Organización no podrá tomar decisiones que contravengan los derechos adquiridos en la categoría o esp, cialidad” de los miembros de la Unidad Apropiada.
En el caso de autos, el derecho del maestro incumbente en el puesto adquirido mediante las Prácticas Pasadas, de asignarle los mismos cursos que en el año pasado, tiene un valor o utilidad claro para el maestro. Al enseñar los mismos cursos adquiere y acumula destreza y no tiene que volver a pasar por el proceso de prepararse para enseñar el material de un curso que no ha enseñado antes, el cual es un proceso sustancialmente más laborioso que el repasar el tema que ya enseñó previamente. En forma similar, si le quitan una sección de los cursos que enseñó el año anterior y le asignan otro curso diferente, el maestro afectado puede terminar con un mayor número de cursos diferentes que el año anterior, lo cual requiere mayor esfuerzo de preparación.
Contrapuesto a lo anterior, está lo dispuesto en la Sec. 24.07, supra, al efecto que la asignación de cursos se regirá por el principio de antigüedad. Ello implica que en igualdad de condiciones, al asignar los cursos se le dará preferencia al maestro con más antigüedad. Así por ejemplo, si quedan disponibles sin asignar un grupo de cursos porque el maestro que los enseñaba previamente se retiró, o se transfirió fuera de la escuela, este principio indica que si el maestro de mayor antigüedad entre los calificados para enseñarlos está interesado, se le asignarán los cursos a éste. En forma similar, cuando un cambio en el currículo conlleva que se añada un nuevo curso, o una sección adicional de uno existente, si el maestro de mayor antigüedad solicita que se le asigne, así procede bajo la Sec. 24.07, supra.
La situación de autos no se refiere a un caso de retiro o transferencia del maestro en un curso en particular, ni a un nuevo ofrecimiento académico. Lo que aquí se contempla es el desplazamiento forzoso {“bumping”) de un maestro que tenía ya asignado ya el curso, por la única razón de que medie una solicitud de otro maestro con más antigüedad y que interesa que se le asigne una plaza que no está vacante en ese momento y que está propiamente asignada a un maestro idóneo conforme al criterio del Departamento de Educación. El desplazamiento de un empleado por otro de mayor antigüedad es parte de algunos convenios colectivos al disponer las normas en que se llevará a cabo una reducción de personal. En tales circunstancias se suele proveer que el empleado de mayor antigüedad puede desplazar al de menor, siempre y cuando esté cualificado para llevar a cabo las tareas asignadas al puesto que ocupaba el otro. De esa forma se aísla parcialmente al empleado de mayor antigüedad de los efectos negativos de la reducción del número de empleados. Dado el efecto significativo del desplazamiento, dicha provisión debe exponerse claramente y sin ambigüedad en el Convenio *1106 Colectivo. Al examinar el texto de la Sec. 24.07, supra, concluimos que ésta no establece claramente un derecho de desplazar al empleado de menos antigüedad.
Al considerar los dos elementos en conflicto, el derecho a continuar enseñando lo que ha enseñado en el período inmediatamente antes, sostenido por las Prácticas Pasadas, el Art. X, supra, y la Sec. 24.06, supra, versus el derecho de desplazar al empleado de menor antigüedad, nos es evidente que debemos favorecer el derecho de continuar enseñando lo que se ha enseñado en el período inmediatamente antes. Este tiene un respaldo mucho más claro en la doctrina del derecho laboral y en el Art. X y la Sec. 24.06 del Convenio Colectivo, supra.
Una segunda consideración que también nos inclina a denegar lo solicitado por el Sr. Luis Fiol Fumero, es la imperiosa necesidad de mantener la estabilidad en el sistema. De concederse lo solicitado por éste, se crea el problema de cómo reemplazarle al maestro incumbente el curso para que tenga de nuevo su carga completa de cinco cursos. Ello podría desencadenar un “Bumping” geométrico que sería nefasto para el sistema público de enseñanza. Dos situaciones problemáticas son previsibles. Si el maestro incumbente tiene más antigüedad que un tercero, que a su vez ocupa otra plaza que ha venido ejerciendo, entonces podría repetirse el proceso, lo cual resultaría en multiplicar el problema, convirtiéndolo en el problema de conseguir un quinto curso para el maestro. Una vez termine ese proceso, porque ya no queda un maestro con menos antigüedad, este último tiene que aceptar el curso que descartó uno de los anteriores y que todavía no ha sido asignado a ningún maestro. Pero no todos los maestros tienen las mismas certificaciones en términos de los cursos que están capacitados para enseñar. El maestro al final de la cadena puede no tener la calificación para enseñar el curso que ha quedado sin asignar. Así vemos como el concederle al Sr. Luis Fiol Fumero la solicitud de enseñar el curso que interesa conlleva la fatalidad devastadora de un efecto en cadena, creando una sustancial inestabilidad en el sistema.
En atención a todos los factores antes discutidos, resolvemos que no procede desplazar a un.maestro o maestra mediante “Bumping” para asignarle al Sr. Luis Fiol Fumero el curso solicitado por este último. No incidió el tribunal al revocar el Laudo L-06-038.
La sentencia recurrida, del 23 de octubre de 2006, indica que revoca el laudo por razón de que no se le proveyó oportunidad de participar en el proceso al maestro a quien se pretendía desplazar. Siendo éste un defecto procesal remediable, dispuso que la desestimación de la querella fuera sin perjuicio. No obstante y como hemos visto, el proveerle participación en el proceso a dicho maestro, no eliminaría lo ya señalado y las consideraciones que hemos discutido. Por lo tanto, modificaremos la sentencia para disponer que la desestimación es con perjuicio.
III
Por las consideraciones antes expuestas, se modifica la sentencia emitida el 23 de octubre de 2006 para disponer que la desestimación de la querella AQ-04-525 es con perjuicio, y así modificada se confirma la sentencia del Tribunal de Primera Instancia.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2008 DTA 51
1. El 9 de noviembre de 2005 era la tercera vez que se citaba una vista evidenciada para dilucidar la querella. En la vista citada para el 2 de febrero de 2005, la Federación también solicitó someter el caso a base de Exhibits y memorando de *1107 derecho, sin desfilar prueba ante el árbitro.
2. En las etapas iniciales existía un segundo asunto, el cual las partes retiraron del foro de arbitraje, acordando abordar el mismo mediante un proceso de discusión informal entre las partes.
3. La sección dispositiva de la sentencia expone: “[Djejamos sin efecto el laudo L-06-038 emitido por el Árbitro Noel Hernández, sin perjuicio de que, en el futuro, se inste una querella que resuelva la controversia en los méritos y se diseñe un remedio limitado a lo planteado por el querellante Fiol. ”
Nuestro análisis en la presente sentencia nos lleva a concluir que no existe forma de implementar el principio de antigüedad mediante el desplazamiento ([‘bumping”) del maestro que lo había enseñado el año anterior, o sea, en la manera solicitada por el querellante Fiol, que no viole los derechos adquiridos del maestro desplazado, por lo que procede la desestimación de su querella con perjuicio.
4. No hemos localizado en el expediente el nombre del maestro que tenía asignado para el próximo año escolar el curso que solicitó el Sr. Fiol, ni el curso que solicitó. Tampoco se describen los datos en los que se basó el Sr. Fiol para reclamar mayor antigüedad que el otro maestro.
5. No procede devolver el caso al nivel de arbitraje para que la parte querellante desfile evidencia que optó por no presentar. El adjudicador viene llamado a hacer las inferencias razonables conforme la prueba presentada por las partes. Correspondía al querellante presentar evidencia que demostrara la existencia de una controversia justiciable y éste rehusó desfilar prueba ante el árbitro. Cuando el querellante no desfila evidencia de hechos concretos que justifiquen conceder un remedio, procede declarar no ha lugar la querella con perjuicio.
6. A manera de ejemplo, véase que Elkouri & Elkouri, How Arbitration Works, 5ta. ed., BNA Books, Washington, D.C., 1997, págs. 806-883, dedica 78 páginas a discutir este tema.
7. El Convenio Colectivo se firmó el 20 de agosto de 2002, por lo que la referencia a procedimientos a llevarse a cabo antes del 30 de septiembre del año 2000, pone en duda la vigencia de esta sección.
8. El término “Prácticas Pasadas” tiene un significado legal específico en las doctrinas jurídicas del derecho laboral, que en general coincide con el uso lego de dicha frase. Para una exposición sobre dicha doctrina, véase D. Fernández Quiñones, El Arbitraje Obrero-Patronal, Ed. Forum, 2000, § 4.7A y 4.7B, págs. 241-243, y Elkouri & Elkouri, IIow Arbitration Works, supra, Cap. 12, págs. 630 -854.
9. Véase, a modo de ejemplo, los maestros mencionados a la página 8 del Laudo L-05-101 (Ap. pág. 134).