Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 26 de diciembre de 2024.

Comparece ante nos la señora Keyla Michelle Vega Rivera ("Apelante" o "señora Vega Rivera") mediante *Recurso de Apelación* presentado el 31 de julio de 2024. Nos solicita que revisemos la *Resolución* emitida el 26 de agosto de 2022, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro *a quo*" o "foro primario"). Mediante esta, el foro *a quo* determinó que la custodia de los hijos de las partes de epígrafe la continuaría ostentando el señor Edwin Geordi Pérez Arnal ("Apelado" o "señor Pérez Arnal"), padre de los menores. En consecuencia, denegó la solicitud de autorización de relocalización instada por la Apelante.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen apelado.

### I.

Con el fin de atender los planteamientos presentados por la Apelante, procederemos a hacer un resumen de los hechos procesales más relevantes a la controversia que hoy resolvemos. La señora Vega Rivera contrajo matrimonio con el señor Pérez

Número Identificador

SEN(RES)2024_____

Arnal el 24 de junio de 2007. Como producto de esta relación, las partes procrearon dos (2) hijos, los cuales actualmente son menores de edad. Por esta razón, para garantizar su derecho a la confidencialidad del proceso, en este dictamen, se identificará a los menores con las siglas LPV y EPV respectivamente. Transcurrido un tiempo, el 15 de mayo de 2019, la Corte del Segundo Distrito Judicial del Estado de Nevada, División de Familia para el Condado de Washoe, emitió una sentencia de divorcio, la cual decretó disuelto el vínculo matrimonial entre las partes. En torno a los asuntos relacionado a los hijos, la sentencia de divorcio resolvió que ambos progenitores conservarían la patria potestad de los menores, pero el señor Pérez Arnal tendría la custodia física de sus hijos, debido a que estos se mudarían a Puerto Rico a partir de julio de 2019.

Así las cosas, el 28 de febrero de 2020, el Apelado instó una *Demanda* sobre custodia y alimentos contra la señora Vega Rivera.[1] Mediante esta, señaló que la Apelante se mudó de manera permanente al estado de California, lo que ocasionó que el estado de Nevada perdiera jurisdicción sobre ella. En vista de lo anterior, solicitó al foro primario que asumiera jurisdicción sobre los asuntos en torno a la patria potestad, custodia, relaciones maternofiliales y alimentos de los hijos habidos durante el matrimonio entre las partes. Por su lado, el 12 de julio de 2020, la señora Vega Rivera presentó *Contestación a Demanda*,[2] mediante la cual, en esencia, negó ciertas alegaciones y levantó algunas defensas afirmativas. Entre estas, solicitó que se le reconociera y garantizara al menos un cuarenta por ciento (40%) del tiempo anual para que los menores estuviesen bajo su custodia.

---

[1] Véase, Apéndice del Recurso, págs. 2453-2457.
[2] *Íd.*, págs. 2438-2441.

Subsiguientemente, el 18 de agosto de 2020, las partes sometieron *Moción Sobre Estipulación Conjunta,*[3] en la que acordaron que la patria potestad sería compartida. A esos fines, aclaró que la custodia física la tendría el Apelado mientras la Apelante no estuviera en la jurisdicción de Puerto Rico y que esta última viajaría esporádicamente a la Isla para compartir con sus hijos. Así pues, el foro primario emitió una *Sentencia* el 27 de agosto de 2020 en la que acogió los acuerdos informados entre las partes en la aludida moción.[4]

A pesar de haberse materializado un entendido entre la señora Vega Rivera y el señor Pérez Arnal, se suscitaron varias controversias relacionadas a la custodia de los menores. El 16 de agosto de 2021, el Apelado instó escrito intitulado *Urgente Moción en Solicitud de Limitación al Ejercicio de la Patria Potestad.*[5] En esta alegó que la Apelante estaba incumpliendo con el acuerdo convenido entre las partes. Explicó que la señora Vega Rivera había impedido que uno de los menores recibiera medicamento como parte de un tratamiento. Además, esgrimió que la Apelante interrumpiera los cursos de verano de uno de los menores e indispusiera a sus hijos en contra de la esposa del Apelado, entre otros asuntos. Por tales motivos, solicitó la adjudicación de la patria potestad tanto de LPV como de EPV.

En respuesta, el 24 de septiembre de 2021, la señora Vega Rivera presentó *Moción Solicitando Traslado de Menores.*[6] Por virtud de esta, explicó distintas situaciones respecto a la salud de uno de los menores, esbozó que, a su juicio, el mejor bienestar de sus hijos era que estos se trasladaran a Estados Unidos junto a la Apelante por lo cual le solicitó autorización para traslado y la concesión de la custodia de los menores.

---

[3] *Íd.,* págs. 2427-2443.
[4] *Íd.,* págs. 2418-2420.
[5] *Íd.,* págs. 2412-2417.
[6] *Íd.,* págs. 2394-2398.

Ulteriormente, el 6 de diciembre de 2021, el asunto se refirió a la Unidad Social de Relaciones de Familia y Asuntos de Menores ("Unidad Social") para realizar un estudio social en torno al asunto de la custodia y la relocalización.[7] El 6 de junio de 2022, la trabajadora social Karen Hernández Betancourt produjo el Informe Social Forense encomendado.[8] En conclusión, dicho informe recomendó que los menores permanecieran en Puerto Rico bajo la custodia del Apelado y, por ende, recomendó no autorizar la relocalización. El 21 de junio de 2022, la señora Vega Rivera presentó *Moción en Cumplimiento de Orden en torno a Informe Social; Moción sobre Impugnación de Informe Social, Anunciado Perito de Impugnación y Solicitud de Orden a la Trabajadora Social.*[9] En esta, impugnó el Informe Social pues, alude que este adolecía de crasas omisiones en la metodología. Señaló que el informe en cuestión estaba sesgado a favor de la figura paterna y las recomendaciones no respondían al mejor bien estar de los menores. En ese sentido, informó que contrató los servicios de la trabajadora social Eunice Vázquez como perito de impugnación y asesora.

Tras varios incidentes procesales los cuales son innecesarios detallar y luego de haberse estipulado una serie de prueba documental **se llevó a cabo el juicio en su fondo**. El mismo se celebró por diez días, a saber, el 5,7,11,12 y 13 de septiembre de 2023; el 15,16,17 de noviembre de 2023 y el 13 y 14 de febrero de 2024. Durante estos días testificaron las siguientes personas:

1. Sr. Dharma Clement - esposo de la señora Vega Rivera
2. Dra. Anna Sylvia García Passalacqua - Psicóloga, Perito de ocurrencia
3. Karen Hernández Betancourt - Perito del Tribunal
4. Dra. Karen Cruz Rodriguez - Neuróloga Pediátrica, Perito de Ocurrencia

---

[7] *Íd.*, pág. 2382.
[8] *Íd.*, págs. 2162- 2199.
[9] *Íd.*, págs. 2112-2116.

5. Dr. Héctor Rivera Maldonado - Director del Instituto de Investigación de Desarrollo para Estudiantes Dotados

6. Dr. Larry Emil Alicea Rodríguez - Perito a cargo de Estudio social en Novato, California

7. Dr. Edgar Solis Sánchez - Neurólogo Pediátrico, Perito de Ocurrencia

8. Sra. Olga Joglar - Directora de CEDIN

9. Sra. Eunice Vázquez - Perito Revisor

10. Sra. Wanda Lourdes Rivera Figueroa - madre de la señora Vega Rivera.[10]

Además, el 15 de febrero de 2024, con anuencia de las partes, los menores fueron entrevistados en despacho por la jueza que presidió los procedimientos, junto con la trabajadora social Tahisa Vélez y el 16 de febrero del mismo año se llevó a cabo una vista en la cual se discutió la aludida entrevista de los menores. Sometido el caso por las partes, el 28 de junio de 2024, el foro *a quo* emitió *Resolución.*[11] Mediante esta, formuló doscientas treinta y dos (232) determinaciones de hechos, **las cuales surgen tanto de la prueba documental como testimonial examinada por el foro *a quo.***[12] Conforme a estas determinaciones, el foro a quo concluyó que el señor Pérez Arnal continuaría ostentando la custodia de los menores. A su vez, prohibió el traslado de los menores fuera de la jurisdicción de Puerto Rico. Del mismo modo, se estableció como se llevarían a cabo las relaciones maternofiliales e instruyó sobre el hecho de que podían hacer modificaciones al plan propuesto por el foro primario siempre y cuando mantuviesen una comunicación asertiva y cordial. Por último, apercibió a los progenitores a que estos debían cumplir fielmente lo establecido en la Resolución, so pena de sanciones.

Inconforme con el resultado, el 31 de julio de 2024, la Apelante compareció ante esta Curia mediante el recurso de epígrafe y formuló los siguientes señalamientos de error:

---

[10] *Íd.*, pág. 14.
[11] *Íd.*, págs. 12-39.
[12] Las doscientas treinta y dos (232) determinaciones de hechos contienen información sensitiva de los menores, por lo cual nos abstenemos de transcribirlas en la presente sentencia.

Primer Error: Erró y abuso de su discreción el honorable Tribunal de Primera Instancia, al otorgarle la custodia al apelado obviando el tracto procesal del caso y el expediente judicial, así como los requisitos jurídicos aplicables a casos de custodia y traslado y la normativa Jusino González v. Norat Santiago.

Segundo Error: Erró y abusó de su discreción el honorable Tribunal de Primera Instancia, al adoptar las recomendaciones de un Informe Social forense rendido por la Unidad Social que no refleja la realidad actual de las partes en aspectos fundamentales, siendo las intervenciones que dan pie al informe remotas, y en contravención a la norma de y los requisitos jurídicos aplicables a los informes sociales de custodia y la recomendación de la propia T.S. quien declaro que lo idóneo era efectuar una reevaluación.

Tercer Error: Erró y abuso de su discreción el honorable Tribunal de Primera Instancia, al no tomar en cuenta e ignorar, sin fundamento para ello, hechos materiales importantes que no podían ser pasados por alto para la determinación de custodia y relocalización [sic]; al descartar hechos importantes y sopesar y calibrar livianamente todos los hechos materiales importantes para efectuar su determinación de custodia; y al apreciar la prueba y determinar los hechos actuando contrario a la norma de garantizar un juicio justo e imparcial.

Cuarto error: Erro y abuso de su discreción el honorable Tirubnal [sic] de Primera Instancia al actuar contario a la norma establecida en Muñoz Sanchez v. Báez de Jesus y al establecer un estándar contrario a derecho al evaluar la relocalización según a la norma establecida en Muñoz Sanchez v. Báez de Jesús.

El 19 de agosto de 2024, esta Curia emitió *Resolución* en la cual, entre otros asuntos, se le concedió a la Apelante un término de treinta (30) días contados a partir de la entrega de la regrabación de los procedimientos para que presentara la transcripción de la prueba oral estipulada ante este Tribunal. Asimismo, le concedimos a la Apelante que, un término de quince (15) días, a partir de la presentación de la transcripción, para presentar un alegato suplementario. De la misma manera dispusimos que la parte Apelada debería presentar su alegato en un término de treinta (30) días, a partir de la fecha de presentación del alegato suplementario.

En cumplimiento con lo ordenado, el 16 de octubre de 2024, la señora Vega Rivera presentó *Moción Informativa y*

*Suplementando Escrito Presentado Sometiendo Transcripción de la Prueba Oral Estipulada,* mediante la cual informó la entrega de la transcripción de la prueba oral debidamente estipulada por las partes. De igual manera, tras varios asuntos procesales, el 13 de octubre de 2024, la señora Vega Rivera presentó su alegato suplementario y el 2 de diciembre del mismo año, el señor Pérez Arnal presentó *Alegato de Parte Apelada.* Con el beneficio de la comparecencia de ambas partes, de los documentos que obran en el expediente y de la transcripción de la prueba oral estipulada, procedemos resolver el asunto que está ante nuestra consideración.

## II.

### A. *Estándar de Revisión de Apreciación de Prueba*

La Regla 43.2 de Procedimiento Civil, 32 LPRA Ap. V. R. 43.2 establece en lo pertinente que "[l]as determinaciones de hecho basadas en el testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos."

En nuestro ordenamiento jurídico, la "tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada". *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 792 (2020). Esto "incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Íd,* citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). Los tribunales apelativos "no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos". *Dávila Nieves v. Meléndez Marín, supra,* pág. 770.

Por ello, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza ese foro *Sucn. Rosado v. Acevedo Marrero,* 196 DPR 844, 917 (2016). Sin embargo, esa deferencia descansa en un marco de discreción y razonabilidad. *Citibank NA v. Cordero Badillo,* 200 DPR 724, 735 (2018). La discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016). Así que, ese juicio discrecional "no es en función al antojo o voluntad de uno, sin tasa ni limitación alguna". *Santa Aponte v. Srio. Hacienda,* 105 DPR 750, 770 (1977). Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro **únicamente cuando existen circunstancias extraordinarias en las que se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en un error manifiesto o de derecho.** *Citibank NA v. Cordero Badillo, supra,* pág. 736.

Se dice que el tribunal incurrió en un error manifiesto "cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del tribunal". *Gómez Márquez et al. v. El Oriental*, supra*,* pág. 793. Esto implica que "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Íd.* Véase, también, *Pueblo v. Rivera Montalvo,* 205 DPR 352, 374 (2020). Dicho estándar de revisión, "restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en los que de la prueba admitida *no exista base suficiente que apoye tal determinación". Pueblo v. Toro Martínez,* 200 DPR 834, 859 (2018). (Énfasis en el original).

Por otro lado, el juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín, supra,* pág. 782. De otra parte, un tribunal puede incurrir en abuso de discreción cuando el juez: (1) ignora sin fundamento algún hecho material importante que no podía pasar por alto, (2) concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. *Pueblo v. Sanders Cordero,* 199 DPR 827, 841 (2018).

### B. Custodia

La Carta de Derechos de la Constitución de Puerto Rico, así como la Primera Enmienda de la Constitución de Estados Unidos, consagra expresamente determinados derechos fundamentales de los individuos. Emda. I, Const. EE.UU., LPRA, Tomo 1, ed. 2016, pág. 182; *Rodríguez Rodríguez v. ELA,* 130 DPR 562, 577 (1992). Entre ellos, se encuentra el derecho a la intimidad, el cual incluye la libertad decisoria respecto al cuido y a la educación de los hijos. *Íd.* Sobre el particular, el Tribunal Supremo de Puerto Rico ha expresado que **"los menores de edad no son meras criaturas del Estado; por ende, la relación entre padres e hijos está protegida constitucionalmente y se ha establecido que los padres tienen derecho a decidir sobre el cuido, la custodia y el control de los hijos".** (Énfasis suplido). *Íd.,* pág. 146. El término custodia ha sido definido por nuestro máximo foro como "la tenencia o control físico que tiene un progenitor sobre sus hijos". *Torres, Ex Parte,* 118 DPR 469, 477 (1987). Además, se ha

establecido que la custodia es un componente de la patria potestad, pues esta impone a los padres el deber primario de tener a sus hijos no emancipados en su compañía. *Íd,* pág. 476.

Ahora bien, ningún derecho fundamental es absoluto, por ello, "los derechos de los padres pueden limitarse con el propósito de proteger un interés apremiante del Estado, como lo es [el] bienestar de los menores". *Rexach v. Ramírez,* 162 DPR 130, 147 (2004). Así, por ejemplo, el Estado, en su función *parens patriae,* puede privar, suspender o restringir la custodia y patria potestad de los hijos, cuando estos no puedan satisfacer las necesidades de los menores. *Íd.* La función *parens patriae* del Estado, la cual fue delegada a los tribunales, se ejerce determinando a quién le corresponde la custodia del menor. *Pena v. Pena,* 164 DPR 949, 959 (2005). **Dicha determinación debe estar "precedida de un análisis objetivo y sereno de todos los hechos que rodean la controversia ante la consideración del magistrado" y "tiene como norte, exclusivamente, garantizar y proteger el mejor interés y bienestar de ese menor".** (Énfasis suplido) *Íd.;* Véase además *Jusino González v. Norat Santiago,* 211 DPR 855, 864, (2023).

En ese contexto, el Tribunal Supremo de Puerto Rico ha expresado que **los tribunales que dilucidan la custodia o patria potestad de un menor no pueden actuar livianamente.** *Pena v. Pena, supra,* pág. 959. Por consiguiente, los tribunales deben contar con la información más completa y variada posible para resolver correctamente. *Íd.* Conforme a lo anterior, "los tribunales pueden ordenar la comparecencia de cuanta persona entienda pueda ayudarle en el descargo de su delicada misión y puede, asimismo, ordenar aquellas investigaciones de índole social que entienda procedentes y convenientes". *Íd.* Lo anterior debido a que,

mientras más información se recopile, más informada y justa será la decisión que se tome. *Íd.,* pág. 962.

En ese sentido, las unidades sociales de relaciones de familia y asuntos de menores tienen como propósito "ofrecer al juzgador asesoramiento social mediante evaluaciones periciales que permitan tomar decisiones informadas en los casos ante su consideración". *Muñoz Sánchez v. Báez de Jesús,* 195 DPR 645, 652 (2016). Así pues, las *Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores* ("Normas") describe el proceso en casos en que se requiera evaluación parcial por parte de un trabajador social, el cual, entre otras cosas, incluye que estos deberán preparar un Informe Social cuando el tribunal se los requiera. *Íd.* Las Normas definen el concepto de evaluación social forense como el producto final del proceso previamente de evaluación, el cual integra el análisis del trabajador social, y recomendaciones basadas en conocimiento teórico. *Normas y Procedimientos de las Unidades Sociales de Relaciones de Familia y Asuntos de Menores,* Oficina de Administración de los Tribunales, Circular Núm. 6 del 6 de agosto de 2013, a la pág. 9.

De otra parte, las Normas, también proveen para que el trabajador social actualice un informe social previo, cuando no haya transcurrido un año de la evaluación inicial. A esto se le conoce como un informe social complementario. *Íd.*

Por otro lado, es importante mencionar que las determinaciones sobre custodia tienen un carácter *sui generis* y no constituyen cosa juzgada. *Figueroa v. Del Rosario,* 147 DPR 121, 128 (1998). Estas determinaciones están sujetas a revisión judicial ante el foro de instancia "si ocurre un cambio en las circunstancias que así lo justifique", "tomando en consideración los mejores intereses y el bienestar de los menores". *Íd.* En consecuencia, estos

dictámenes nunca son estrictamente finales ni definitivos. La determinación que emita el foro de instancia para resolver una solicitud de modificación de un decreto de custodia o alimentos, por cambios en las circunstancias, adjudica una reclamación entre las partes y constituye una nueva sentencia de la cual puede apelarse. *Íd,* pág. 129.

### C. *Relocalización del Padre Custodio*

En Puerto Rico, los asuntos concernientes a la relocalización del padre custodio está regulado por la *Guía Uniforme para Casos de Relocalización del Padre Custodio,* Ley Núm. 102-2018 32 LPRA sec. 3371 *et seq* ("Ley 102-2018"). Mediante esta legislación, se "busca salvaguardar el principio que rige los asuntos de menores, esto es: el mejor bienestar del menor *Jusino González v. Norat Santiago*, supra, pág. 866 citando la Exposición de Motivos de la Ley 102-2018. Así, el Artículo 6 del aludido estatuto establece:

A.  Se permitirá una relocalización si se prueba que:

1.  No es para impedir la relación del padre no custodio o persona interesada con el menor;
2.  Existe una razón válida y determinante para relocalizarse; y
3.  Ofrecerá una mejor oportunidad de vida tanto para el padre custodio o tutor como para el menor.
4.  Factores a considerar al determinar el mejor bienestar del menor:
5.  Preferencia del menor en aquellos casos donde tenga derecho a ser oído;
6.  Relación del menor con el padre no custodio;
7.  Relación del menor con las personas interesadas y la forma en que éstos llevan a cabo su derecho de visita;
8.  Periodo de tiempo que el menor lleva residiendo en la residencia principal y los lazos emocionales que lo une a ella;
9.  Oportunidades de desarrollo, tanto emocional, como físico y educacional;
10. Impacto que tendrá el traslado en su desarrollo;
11. Disposición del padre custodio o tutor de permitir al otro padre no custodio o persona interesada de ejercer su derecho a visita, relacionarse con el menor y custodia compartida en los casos que aplique;

12. Potencial de cambio en la vida del padre custodio o tutor y del menor;

13. Posibilidad económica del padre no custodio o persona interesada de ejercer su derecho a visita para relacionarse con el menor;

14. Grado de responsabilidad del padre no custodio o persona interesada en sus obligaciones para con el menor;

15. El Tribunal podrá ordenar el realizar un estudio social del área al cual planean mudar al menor. Este estudio, entre otras cosas, deberá incluir un análisis de la criminalidad del área interesada;

16. Lugar donde el menor va a estudiar, nombre e información completa de la escuela: dirección, teléfono, maestro del menor y nombre del director;

17. En caso de que el menor no tenga edad suficiente para asistir a la escuela, nombre del cuido e información completa en el que estará el menor o en caso de que sea una persona particular información completa de la misma;

18. Lugar de trabajo, nombre e información general del padre custodio o tutor legal: teléfono, dirección y nombre del patrono;

19. Información de las personas adicionales al padre custodio o tutor legal con las que vivirá el menor, de ser el caso;

20. Información del casero en los casos donde la residencia sea alquilada;

21. Certificación de empleo o estudios;

22. Se observará la recomendación del trabajador social en cuanto al efecto que esto tendrá en el menor;

23. El seguro médico que tendrá el menor; y

24. Cualquier otro factor que el juzgador entienda necesario, tomando como principio la equidad entre las partes.

Nuestro Tribunal Supremo ha aclarado que "la determinación de permitir o denegar el traslado de un menor debe hacerse con extremo cuidado, porque esas determinaciones "tiene[n] como norte brindar certeza y estabilidad al entorno familiar de un menor de edad". *Jusino González v. Norat Santiago*, supra, pág. 868, citando a *Muñoz Sánchez v. Báez de Jesús, supra*, pág. 653.

**III.**

En el caso que nos ocupa, la señora Vega Rivera nos solicita que revoquemos la *Resolución* emitida por el foro primario el 28 de junio de 2024 y notificada el 1 de julio del mismo año. En esta, el

foro *a quo* denegó su petitorio en torno a la relocalizsún de sus hijos y determinó que la custodia continuaría bajo la autoridad del señor Pérez Arnal. Esboza la Apelante, en su primer señalamiento de error, que el foro primario erró al otorgarle la custodia de sus hijos al Apelado, al obviar el tracto procesal del caso, y al apartarse de los requisitos jurídicos aplicables en este tipo de controversia. Por otro lado, en su segundo señalamiento de error, apunta que las recomendaciones vertidas en el Informe Social Forense rendido por la Unidad Social no reflejan la realidad actual de las partes, por lo que el foro primario no debió adoptar el mismo en el dictamen recurrido. Además, arguye la Apelante–como tercer señalamiento de error– que el foro primario incidió al ignorar hechos materiales y al apreciar la prueba. Cónsono con lo anterior, sostiene que erró el foro primario al realizar en el presente caso determinaciones de hechos sin garantizar un juicio justo e imparcial. Finalmente, esboza como cuarto señalamiento de error, que el foro *a quo* no actuó conforme a la norma establecida en *Muñoz Sánchez v. Báez de Jesús, supra.* Veamos.

Por estar íntimamente relacionados, procedemos a discutir el primer, segundo y cuarto error esgrimidos por la señora Vega Rivera de manera conjunta. En primera instancia, es norma reiterada que, al realizar una determinación en torno a la custodia de hijos menores de edad, los tribunales están llamados a utilizar como criterio rector el mejor bienestar y los mejores intereses del menor. *Jusino González v. Norat Santiago,* supra, pág. 864. Es por lo que, los tribunales deben ejercer su poder inherente, en la función de *parens patriae* del Estado, de velar por el mejor bienestar de los menores. *Muñoz Sánchez v. Baez de Jesús*, supra, pág. 651. Conforme a lo antes expuesto, el análisis del tribunal previo a una determinación de custodia de menores debe ser **objetivo, sereno y cuidadoso sobre todas las circunstancias en**

**el caso.** *Jusino González v. Norat Santiago,* supra. Como corolario de ello, nuestro Máximo Foro ha dispuesto una serie de criterios que los tribunales deben sopesar en el ejercicio y análisis de una determinación de custodia.[13] Asimismo, el foro primario, en su facultad de *parens patriae*, puede ordenarle a la Unidad Social del tribunal, la preparación de un Informe Social Forense con el propósito de **ilustrar** al tribunal en cómo proceder. Muñoz Sánchez v. Báez de Jesús, *supra,* pág. 652.

En el caso de autos, fue cuestionado por la Apelante el cumplimiento con la norma establecida en Muñoz Sánchez v. Báez de Jesús, *supra.* Luego de evaluado el voluminoso expediente, y la prueba documental y testifical presentada, se desprende del mismo que los elementos dispuestos jurisprudencialmente fueron considerados por el foro *a quo*. Nótese que, el foro primario examinó y aquilató prueba tanto documental como testimonial. Dicha evidencia, puso al foro primario en posición de tener ante sí evidencia sustancial y actualizada para tomar una determinación objetiva, cuidadosa y serena.

Sin embargo, la Apelante cuestiona que el Informe Social sometido y utilizado por el foro primario en su determinación de custodia constituye un abuso de discreción, ya que el mismo no refleja la realidad actual de las partes. Ampara su argumento en que la trabajadora social adscrita al caso, Karen Hernández Betancourt ("señora Hernández"), recomendó que se realizara una reevaluación, según se desprende de la transcripción del juicio. Si bien es cierto que el informe fue presentado el 6 de julio de 2022, y había transcurrido poco más de un (1) año este hecho por sí solo

---

[13] Entre los factores que han de analizarse se encuentran: la preferencia del menor, su sexo, su edad, salud mental y física; el cariño que las partes podrían brindarle; la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas del menor; el grado de ajuste de éste al hogar, la escuela y la comunidad en que vive; su interrelación con las partes, sus hermanos y otros miembros de la familia, y la salud psíquica de todas las partes, entre otros elementos. *Muñoz Sánchez v. Baez de Jesús,* supra, pág. 651.

no invalida el mismo. Esta Curia, según señalado previamente, analizó vasta prueba documental y testifical presentada en el caso de marras. En particular, es menester destacar que se presentaron diez (10) testigos, testimonios que fueron evaluados y considerados en la adjudicación de la controversia de custodia y relocalización.[14] De la misma forma, es necesario señalar que el foro primario tuvo la oportunidad de entrevistar a los menores.[15] No empece a ello, la Apelante reiteró su intención de impugnar el aludido informe, asunto que se ventiló en el juicio. A esos fines, el foro *a quo* determinó que "la señora Vega Rivera no logró establecer que el Informe Social objeto de impugnación se aleje de lo que dispone el *Manuel de Normas* [...] y la legislación aplicable; ni tampoco logró establecer que lo se nos recomienda no encuentre base en los hallazgos".[16]

Examinados los planteamientos esbozados esta Curia colige que los argumentos presentados en torno a la invalidez del Informe Social Forense carecen de base jurídica. Es preciso recordar que la finalidad de los informes de las unidades sociales es **brindarle al juzgador asesoramiento** mediante evaluaciones periciales que le permitan al foro primario tomar decisiones informadas en los casos ante su consideración. Muñoz Sánchez v. Baez de Jesús, *supra*, pág. 652. En otras palabras, el informe **no es un documento vinculante** sino más bien se trata de una herramienta que le sirve al foro primario en el proceso de adjudicación de una controversia.

---

[14] Los testigos que declararon en sala fueron: el señor Dharma Clement, esposo de la señora Vega Rivera; la doctora Anna Sylvia García Passalacqua, psicóloga; la señora Karen Hernández Betancourt, trabajadora social y perito del tribunal; la doctora Karen Cruz Rodríguez, neuróloga pediátrica; el doctor Héctor Rivera Maldonado, director del Instituto de Investigación de Desarrollo para Estudiantes Dotados; el doctor Larry Emil Alicea Rodríguez, perito a cargo de Estudio social en Novato, California; el doctor Edgar Solis Sánchez, neurólogo pediátrico; la señora Olga Joglar-Directora de CEDIN (la escuela donde estudian los menores); la señora Eunice Vázquez-perito revisor del Informe Social Forense y la señora Wanda Lourdes Rivera Figueroa, madre de la señora Vega Rivera.

[15] Véase, Transcripción de la Prueba Oral, pág. 78, líneas 11-23; pág. 180. líneas 20-22.

[16] Véase, apéndice del recurso, pág. 37. No empece a lo antes expuesto, no consta en el expediente de autos petición alguna por las partes de epígrafe al foro primario en la que se solicite la reevaluación o actualización del Informe Social Forense presentado.

Ahora bien, aunque el Informe de la Unidad Social pudo requerir un informe social complementario para atemperar distintos aspectos en las circunstancias de los menores, la vasta prueba desfilada en el juicio subsanó cualquier deficiencia en cuanto al informe mencionado. A esos fines, reseñamos algunos de los testimonios esenciales. El 7 de septiembre de 2023, testificó, la **Dra. Ana Sylvia García Passalacqua, psicóloga clínica** que **evaluó a los menores en agosto de 2023**.[17] En su testimonio, la psicóloga destacó que a los menores se le realizaron pruebas cognoscitivas y de personalidad.[18] Subrayó la condición de rasgo depresión leve que tenía uno de los menores y su aprovechamiento académico,[19] el cual, pese a considerase como un joven dotado, era deficiente por falta de interés.[20] También acentuó que otro factor que pudo haber afectado su limitado desempeño académico pudo ser los constantes cambios de escuela.[21]

De igual forma, es menester destacar, el testimonio de la señora **Olga Joglar, quien es la directora de la institución escolar** a la cual acuden los menores.[22] Esta abundó sobre las calificaciones y **desempeño académico en el año escolar 2022-2023** de uno de los hijos de las partes.[23] De igual manera, es significativa, la discusión que tuvo el foro primario en torno a la **entrevista** que se le realizara a los **menores** y el **deseo manifestado por éstos de permanecer en Puerto Rico**.[24]

A esos fines, reiteramos que la prueba testifical vertida en el juicio, más otras tantas piezas de evidencia que obran en el expediente, constituyen prueba sustancial. Esta le proveyó al foro primario la oportunidad de comprobar la certeza de la prueba

---

[17] Véase, Transcripción de la Prueba Oral, págs. 235-467.
[18] *Íd.,* pág. 256, líneas 1-3; pág. 260, líneas 1-7.
[19] *Íd.,* pág. 312, línea 12- pág. 314, línea 2.
[20] *Íd.,* pág. 299 línea 10- pág. 300, línea 13.
[21] *Íd.,* pág. 350 línea 2- pág. 351 línea 11.
[22] *Íd.,* págs. 695-756.
[23] *Íd.,* pág. 726, línea 7- pág. 732, línea 12.
[24] *Íd.,* pág. 1875, línea 12-15; pág.1878, línea 7-10.

documental sometida -incluyendo la información del Informe Social Forense- y actualizar la misma a través de los testimonios vertidos en sala. Podemos concluir que el foro *a quo* tuvo evidencia sustancial para adjudicar la controversia de una manera objetiva, cuidadosa y sosegada conforme a los criterios dispuestos en Muñoz Sánchez v. Baez de Jesús, *supra,* y el mejor bienestar de los menores. En ese sentido, determinamos que no se cometió el primer, segundo y cuarto señalamiento de error alegado por la Apelante.

Resuelto lo anterior, nos resta por atender el tercer señalamiento de error esbozado por la señora Vega Rivera. La Apelante arguye que el foro primario erró y abusó de su discreción al obviar hechos esenciales en la determinación de custodia y relocalización sin garantizar un juicio justo e imparcial. Conforme a la prueba desfilada, el foro *a quo* formuló sus determinaciones de hechos al amparo de elementos tales como la preferencia de los menores,[25] la salud mental y física de éstos,[26] la habilidad de las partes para satisfacer debidamente las necesidades afectivas, morales y económicas de los menores,[27] la institución académica y la comunidad en que viven,[28] entre otros. Las aludidas determinaciones se fundamentan en derecho al amparo de la norma dispuesta en Muñoz Sánchez v. Báez de Jesús*, supra.*

Del mismo modo, se desprende que el foro primario tomó en consideración los elementos dispuestos en el Artículo 6 de la Ley 102-2018, conocida como Guía Uniforme para Casos de

---

[25] *Íd.,* págs. 1872-1097, donde se discutió la entrevista que tuvo la jueza que presidió los procedimientos con los menores.

[26] *Íd.,* págs. 235-467, testimonio de la Dra. García Passalaqua, en la cual se discutió las evaluaciones psicologías que esta le realizó a los menores. Igualmente, fue relevante el testimonio del doctor Edgar Solis, neurólogo pediátrico que atendió a uno de los menores. Véase, Transcripción de la Prueba Oral, págs. 471-521.

[27] *Íd.,* págs. 1112-1868, en los cuales testificaron la madre, le padre y la abuela materna de los menores y, entre otros asuntos, se discutieron los pormenores de la relación familiar.

[28] *Íd.,* págs. 695-756, donde testificó la señora Joglar y abundó de la experiencia escolar de uno de los menores.

Relocalización del Padre Custodio.[29] Asimismo, la Apelante no logró probar una razón válida y determinante para relocalizar a los menores y ofrecer una mejor oportunidad de vida para éstos. Prueba de ello, es el testimonio previamente reseñado de la Dra. Ana Sylvia García Passalacqua,[30] así como las declaraciones de la señora Hernández,[31] las cuales enfatizan en cómo los cambios, como por ejemplo el hecho de mudarse de Puerto Rico, inciden en el aprovechamiento académico de los menores. Cabe destacar que éste, el aprovechamiento académico, es uno de los argumentos de la Apelante para solicitar la relocalización.

Cónsono con lo antes expuesto y examinada la transcripción de la prueba oral estipulada, no hallamos indicios que el foro primario actuara con pasión, prejuicio, parcialidad, o que incurriera en craso abuso de discreción o en un error manifiesto. Por tanto, corresponde otorgarle entera deferencia a la apreciación

---

[29] La aludida disposición exige que en los casos de relocalización se tomen en consideración factores para determinar el mejor bien estar del menor tales como: la preferencia del menor en aquellos casos donde tenga derecho a ser oído; Relación del menor con el padre no custodio; relación del menor con las personas interesadas y la forma en que éstos llevan a cabo su derecho de visita; Periodo de tiempo que el menor lleva residiendo en la residencia principal y los lazos emocionales que lo une a ella; oportunidades de desarrollo, tanto emocional, como físico y educacional; impacto que tendrá el traslado en su desarrollo; disposición del padre custodio o tutor de permitir al otro padre no custodio o persona interesada de ejercer su derecho a visita, relacionarse con el menor y custodia compartida en los casos que aplique; potencial de cambio en la vida del padre custodio o tutor y del menor; posibilidad económica del padre no custodio o persona interesada de ejercer su derecho a visita para relacionarse con el menor; grado de responsabilidad del padre no custodio o persona interesada en sus obligaciones para con el menor; el tribunal podrá ordenar el realizar un estudio social del área al cual planean mudar al menor. Este estudio, entre otras cosas, deberá incluir un análisis de la criminalidad del área interesada; Lugar donde el menor va a estudiar, nombre e información completa de la escuela: dirección, teléfono, maestro del menor y nombre del director; lugar de trabajo, nombre e información general del padre custodio o tutor legal: teléfono, dirección y nombre del patrono; información de las personas adicionales al padre custodio o tutor legal con las que vivirá el menor, de ser el caso; información del casero en los casos donde la residencia sea alquilada; certificación de empleo o estudios; se observará la recomendación del trabajador social en cuanto al efecto que esto tendrá en el menor; el seguro médico que tendrá el menor; y cualquier otro factor que el juzgador entienda necesario, tomando como principio la equidad entre las partes.
[30] Véase, Transcripción de la Prueba Oral, pág. 352, línea 1-17, donde se reseña el testimonio de la Dra. García Passalaqua respecto al efecto de los cambios de escuela en uno de los menores.
[31] *Íd.,* pág. 199, línea 17-25; pág. 200, línea 1-8, donde se reseña el testimonio de la señora Hernández respecto a que los menores han tenido estabilidad en Puerto Rico y que académicamente ha habido progreso.

de la prueba que hiciera la juzgadora de los hechos en este caso. Por consiguiente, el tercer señalamiento de error no se cometió.

A esos fines, reiteramos que, conforme a la prueba presentada ante el foro primario, colegimos que tuvo ante sí evidencia sustancial para realizar un juicio objetivo, sereno y minucioso sobre todas las circunstancias en el caso y así poder llegar a la determinación recurrida. Por ende, a tono con lo anteriormente mencionado, entendemos que ninguno de los cuatro (4) errores imputados fue cometido. Por tanto, se confirma la *Resolución* recurrida mediante la cual el foro *a quo* sostuvo que la custodia de los menores debe permanecer en manos de su padre, el señor Pérez Arnal y cónsono con el dictamen, denegó la petición de relocalización solicitada por la Apelante.

**IV.**

Por los fundamentos antes expuestos, **confirmamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones